503 So.2d 1144 (1987)
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION & DEVELOPMENT, Plaintiff-Appellant,
v.
Eldon SONNIER, et ux., Defendants-Appellees.
No. 86-301.
Court of Appeal of Louisiana, Third Circuit.
March 4, 1987.
Rehearing Denied March 27, 1987.
Writ Denied May 29, 1987.
*1145 Frederick J. Fuselier, Baton Rouge, for plaintiff-appellant.
Veil D. Devillier and Darryl Hebert, Eunice, for defendants-appellees.
Before GUIDRY, LABORDE and YELVERTON, JJ.
LABORDE, Judge.
This expropriation suit was instituted by the State of Louisiana, through the Department of Transportation and Development, against defendants, Doris Elaine Sonnier, and her husband, Eldon Sonnier, under the quick taking statute, LSA-R.S. 48:441-460. Defendants' property consisted of a homesite on .775 of an acre fronting the Basile-Eunice Highway (La.-U.S. 190). Improvements to the highway required a taking of the fronting 208 feet by 82 feet in depth or .392 of an acre. The taking left undisturbed the defendants' constructions which consisted of a wood frame house, a dog kennel, and a small shed. In effect, the taking moved defendants closer to the roadway: where defendants' house had been 138 feet from the road, it is now 70 feet from the edge of the pavement; where defendants' house had been 100 feet from the right-of-way, it is now 17.9 feet away.
The State deposited $51,504.00 into the registry of the district court. Defendants felt this amount was insufficient and reconvened for additional damages of $34,899.66, i.e., $86,403.66 total damages minus the $51,504.00 previously deposited. The trial court, after hearing from both parties' experts, ruled in favor of defendants in the amount of $74,385.00, less the amount previously deposited ($51,504.00) so as to award $22,881.00, plus attorney fees of 25% of the difference ($5,720.25), plus legal interest on the difference from the date of the taking (September 9, 1984), plus expert fees of $4,500.00. The State appeals this judgment asserting that the trial court erred in selecting one appraisal method ("replacement") over another ("before and after"). For reasons expressed below, we amend and affirm as amended.
Article 1, section 4 of the Louisiana State Constitution of 1974 mandates that owners of expropriated property be compensated to the full extent of their losses.[1] This declared right is repeated in the statutory formula to measure compensation in LSA-R.S. 48:453.[2] In compensating *1146 the landowners to the full extent of their loss, the owners must be placed in as good a position pecuniarily as they enjoyed prior to the taking. State, Department of Highways v. Bitterwolf, 415 So.2d 196, 201 (La.1982); State, Department of Highways v. Constant, 369 So.2d 699, 702 (La.1979); State, Department of Transportation & Development v. Townsend, 473 So.2d 99, 104 (La.App.3d Cir.1985); State, Department of Transportation and Development v. Boyce Gin Cooperative, Inc., 397 So.2d 1087, 1092 (La.App.3d Cir. 1981); State, Department of Highways v. Champagne, 356 So.2d 1136, 1140 (La. App.3d Cir.1978). The duty of the State, through the courts where necessary, to justly and fully compensate landowners is no easy task considering the necessarily peculiar attributes of each part and parcel of land. As in other areas of remedy where damages are not susceptible to scientific measurement, the trial court is given wide latitude and great discretion in ascertaining the precise amount due to an injured property owner. The trial court's factual determination should not be disturbed on appeal absent manifest error. State, Department of Transportation and Development v. Henry, 468 So.2d 1262, 1266 (La.App.3d Cir.1985); State, Department of Development of Transportation v. Van Willet, 389 So.2d 1346, 1350 (La. App.3d Cir.1980).
In the past, hesitancy existed regarding full compensation to landowners because it was feared that public projects would be stymied as a result of increased costs. It was thought that the individual's loss would be balanced by the public's (including the individual's) gain. As a result, "just" compensation had been the rule in Louisiana prior to the 1974 Constitution. Our Constitution now mandates "full" compensation to expropriatees. The exact method of measurement was left to the courts and the ingenuity of the litigants through their experts.
In response to the perception of inadequate expropriation awards, the notion of "fair market value" was developed by the courts to more justly compensate expropriatees. NOTE, EXPROPRIATION: COMPENSATING THE LANDOWNER TO THE FULL EXTENT OF HIS LOSS, 40 La.L.Rev. 817, 818-19 (1980). Market value is generally defined as that price most likely to be agreed upon after free and open negotiations between a willing seller and a willing buyer. The "comparable sales method" is the preferred manner to compute the market value. By this method, appraisers analyze recent sales prices of similar properties and adjusts them in an effort to estimate the value of the subject property. Id. at 819. When no comparable sales data are available by which to estimate the value of an improvement, the "replacement cost method" is used by Louisiana courts. This method estimates the replacement cost of a functionally similar improvement, less the estimated depreciation representing not accounting theory, but the actual decline in value caused by physical deterioration and functional and economic obsolescence. Id. at 820. Since 1889, Louisiana courts have compensated for severance damages according to a "before and after" test. The measure of damage is the diminution in the value of the remaining property caused by the taking. Bitterwolf, 415 So.2d at 200; McMahon v. St. Louis A & T. R.R., 41 La.Ann. 827, *1147 829-30, 6 So. 640, 641 (1889); M. Dakin & M. Klein, Eminent Domain in Louisiana pp. 70-73 (1970, Supp.1978); Tate, Legal Criteria of Damages and BenefitsThe Measurement of TakingCaused Damages to Untaken Property, 31 La.L.Rev. 431, 433 (1971).
Although not faced with a particularly new problem, the bellwether case of Constant, 369 So.2d at 702, announced definitively that the replacement cost method may be used even when the award would exceed the market value of the property, comprising the entire tract, prior to the taking. We find it particularly significant, however, that the Constant court voluntarily set perameters for the proper usage of the replacement cost method:
"We do not, by these rulings, announce any general principle that replacement cost is always the most appropriate measure of awarding a landowner compensation for the taking of a physical asset used in his business, nor that the depreciation of the former asset should never be considered.
Generally, we assume, the landowners may be compensated fully by other approaches than by awarding them the replacement cost of the improvement taken, especially where (unlike the present instance) the property is not shown to be both unique in nature and location and also indispensable to the conduct of the landowners' business operations on the site from which a part is taken. Likewise, in the usual situation the depreciated value of the asset taken will have some lessening effect on the award to the landowner, since he may be fully compensated by the actual pecuniary value of the asset taken. For instance, the full compensation constitutionally provided does not require that the owner receive a new building to replace a dilapidated one which is expropriated."
Id. at 706-07. We have exhaustively searched the record in the case sub judice for indications of the affected property's (1) uniqueness in nature and location; and also (2) in its indispensability to the conduct of the landowners' business operation. The record is devoid of such indicators.
The record clearly shows that the expropriated land was part of defendants' homesite. The house was set back from the highway some 138 feet with trees punctuating the landscape. A driveway and a "turn-around" area marred the approach to the house with drainage provided by what Mr. Sonnier called a "flat ditch." Mr. Sonnier, a full time Transcontinental Gas Company employee, is also a self-employed contract (well) gauger. He testified that he works out of his house, writing reports after visiting well sites, and stores maintenance equipment on his property. Mr. Sonnier stated that in the course of his work as a well gauger, he has to go to different wells at various locations. He did not show how the property is unique in nature and location. The location of defendants' property has no bearing on the operation of the gauging business, and the site cannot be said to be "indispensable to the conduct of the landowners' business." See Constant, 369 So.2d at 706.
Mr. Gene Cope testified as defendants' expert real estate appraiser. He wrote a report, which was entered in the record, using the replacement cost method. He estimated that the market value of defendants' property before the taking amounted to $79,525.00. In this case, Mr. Cope advocated moving the house to a similar site which would allow defendants to set their house back from the highway. He figured that this would cost $74,385.00. The expert asserted that the only way to restore defendants to an "equal position" as that which they enjoyed prior to the taking would be to physically move the house; thus, the amount represents the cost to place defendants in as good a position physically as they enjoyed prior to the taking.[3]
*1148 The State presented one witness, Mr. Francis L. Grado, an expert real estate appraiser who furnished estimates utilizing the replacement cost method, and the before and after method. The cost to cure or physically transplant the house to a new location came to $70,974.00; while under the before and after method, total compensation amounted to $47,021.00.[4] Under the before and after method, the estimated remaining value of defendants' land and improvements (after the taking) was fixed at $27,279.00. This amount added to the State's estimate of compensation ($47,021.00) equals $74,300.00 which is Mr. Grado's estimate of the market value of defendants' property prior to the taking. Mr. Grado did not mention any unique qualities associated with defendants' land; the taking's effect on defendants' gauging business was similarly unremarkable.
We conclude that the trial court manifestly erred in measuring defendants' compensation via replacement cost. The property was in no fashion "shown to be both unique in nature and location and also indispensable to the conduct of the landowners business operations." Constant, 369 So.2d at 706. This court has recently rejected the replacement method where the two factors announced in Constant were absent. State, Department of Transportation and Development v. Shannon-Page Investment Company, 478 So.2d 702 (La. App.3d Cir.1985). Henry, 468 So.2d at 1268. We find that the before and after method fully compensates defendants for their loss. The record contains only one "after" taking estimate (by Mr. Grado), but it is well reasoned and documented. We accept it. We choose Mr. Cope's "before" figure of $79,525.00 and Mr. Grado's "after" figure of $27,279.00. This leaves $52,246.00 as the just and full compensation for the taking of defendants' property. This amount minus the State's deposit in the registry of the court of $51,504.00 leaves $742.00 due defendants.
For the above and foregoing reasons, the judgment of the trial court is affirmed as amended to show judgment in favor of defendants, Eldon Sonnier and Elaine Fontenot Sonnier, and against the State in the sum of $52,246.00, less the amount previously deposited into the registry of the court of $51,504.00, together with an award of attorney fees equal to 25% of the difference between the amount deposited into the registry of the court ($51,504.00) and the amount of compensation awarded ($52,246.00), with legal interest on the difference from the date of taking (September 9, 1984) until paid, and for defendants' appraiser's fee of $4,500.00.[5] The trial and appellate court costs are taxed to the State.
AFFIRMED AS AMENDED.
NOTES
[1] Art. 1, sec. 4 of the La. Const. of 1974 provides:

"Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power.
Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit. Property shall not be taken or damaged by any private entity authorized by law to expropriate, except for a public and necessary purpose and with just compensation paid to the owner; in such proceedings, whether the purpose is public and necessary shall be a judicial question. In every expropriation, a party has the right to trial by jury to determine compensation, and the owner shall be compensated to the full extent of his loss. No business enterprise or any of its assets shall be taken for the purpose of operating that enterprise or halting competition with a government enterprise. However, a municipality may expropriate a utility within its jurisdiction. Personal effects, other than contraband, shall never be taken.
This Section shall not apply to appropriation of property necessary for levee and levee drainage purposes."
[2] LSA-R.S. 48:453 provides:

"A. The measure of compensation for the property expropriated is determined as of the time the estimated compensation was deposited into the registry of the court, without considering any change in value caused by the proposed improvement for which the property is taken.
B. The measure of damages, if any, to the defendant's remaining property is determined on a basis of immediately before and immediately after the taking, taking into consideration the effects of the completion of the project in the manner proposed or planned.
C. The owner shall be compensated to the full extent of his loss. The court shall include in its consideration the difference between the rate of interest of any existing mortgage on an owner-occupied residence and the prevailing rate of interest required to secure a mortgage on another owner-occupied residence of equal value.
D. The defendant shall present his evidence of value first.
E. Reasonable attorney fees may be awarded by the court if the amount of the compensation deposited in the registry of the court is less than the amount of compensation awarded in the judgment. Such attorney fees in no event shall exceed 25% of the difference between the award and the amount deposited in the registry of the court."
[3] As noted above, our jurisprudence requires that defendants be placed in the same pecuniary position, not physical position. Defendants have cited no case, and we have found none, for the proposition that expropriatees are entitled to be placed in the same position physically. To extend the remedy to such extremes would lead to absurb results; no two plots of land have identical characteristics.
[4] This amount includes (1) severance damages of $40,919.00; (2) the value of land taken estimated at $5,116.00; and (3) the value of improvements taken estimated at $986.00. Mr. Grado placed such a high amount for severance damages because of defendants' change in proximity to the right of way.
[5] The fixing of expert fees is a matter which is largely within the sound discretion of the trial court and such a decision will not be disturbed on appeal absent a clear abuse of discretion. State, Department of Transportation and Development v. Winn, 463 So.2d 648, 652 (La.App. 4th Cir.1984). The expert fee is large in comparison to the award, but in expropriation proceedings, the condemning authority is taxed with the reasonable costs of the expert witness' preparatory work and his appearance in Court. State, Department of Highways v. William T. Burton Industries, Inc., 219 So.2d 837, 845 (La.App.3d Cir.), writ denied, 254 La. 14, 222 So.2d 67 (1969); cf. Goff v. John Hancock Mutual Life Insurance Company, 497 So.2d 747 (La.App.3d Cir.1986) (where large attorney's fees were granted in comparison to the award).