554 So.2d 233 (1989)
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, Plaintiff-Appellant,
v.
Michael WAHLDER, et al., Defendants-Appellees.
No. 88-831.
Court of Appeal of Louisiana, Third Circuit.
December 13, 1989.
Writ Denied February 16, 1990.
Writ Granted March 9, 1990.
*234 Bertrand & Soileau, Ronald Bertrand, Rayne, for plaintiff-appellant.
Eugene Cicardo, Alexandria, for defendants-appellees.
Smith, Taliaferro, V. Russell Purvis, Joneville, for intervenor.
Before DOMENGEAUX, YELVERTON and KING, JJ.
YELVERTON, Judge.
The State of Louisiana, through the Department of Transportation and Development, brought expropriation proceedings against Michael and Nurit Wahlder, the landowners, depositing $163,371 into the registry of the court as full compensation.
The property is located in Alexandria, Louisiana. The Wahlders did not contest the taking. Their answer and a reconventional demand sought additional compensation over and above the amount the State deposited.
A jury awarded the Wahlders $151,692.78. The landowners moved for a judgment N.O.V. The trial judge granted a judgment N.O.V., awarding the Wahlders $322,672.64 as damages caused by the expropriation, with attorney fees on the excess amount over the deposit, and assessing costs against the State. The State has appealed. We reverse in part and affirm in part.
The issues to be decided are whether the trial judge erred in granting the motion for judgment N.O.V. as to the value of the property and the percentage of severance damages sustained.
Before the expropriation, the Wahlders' property was triangular in shape and measured 27,885 square feet, or slightly larger than half an acre. The property bordered public streets on all sides. To the south was the service road for McArthur Drive, a major thoroughfare in Alexandria. To the north was Texas avenue, another major thoroughfare. To the east was Hynson Street, a short, one block street. The State expropriated 6,418 square feet out of the middle of the tract to be used to relocate Texas Avenue so as to make it intersect directly with McArthur Drive. The expropriation resulted in dividing the remaining property into two parcels, a 7,476 square foot remainder to the north and a 13,991 square foot remainder to the south.
Before the expropriation a building used as a lounge was located on the southeast corner of the property near Hynson Street. This building was not affected by the expropriation and was not an issue at trial. On the western half of the property was a building used as a service station/convenience store named Uncle Harvey's. During the trial the parties stipulated that all *235 of the improvements on the property, except the lounge, were rendered useless by the expropriation and agreed on a value for the same. Additionally, the parties stipulated that it would be necessary to remove the underground gasoline tanks and what the removal would cost.
After all of these stipulations, there were only three issues left for the jury to determine: (1) the market value of the land that was taken, (2) the amount of severance damages, if any, to the smaller northern remainder, and (3) the amount of severance damages, if any, to the larger southern remainder.
The jury after hearing two appraisers testify for each side returned a verdict substantially in accordance with the opinions of the State's appraisers concerning the value of the property. The jury found that the land was worth $7 per square foot, that the larger southern remainder did not suffer any severance damages, and that the smaller northern remainder suffered 5% severance damages, i.e., a diminution in value of 5%.
The following is a chart illustrating the valuation of each expert, what the jury determined, and what the judge later determined in the rendition of the judgment N.O.V.

 Value (per Severance Severance
 square Damage to Damage to
 foot) of Larger Smaller
 Property Remainder Remainder
 McCampbell $10.00 40% 90%
 (Landowner's
 appraiser)
 Glorioso $10.18 50% 90%
 (Landowner's
 appraiser)
 Hargis $ 5.99 None 40%
 (State's appraiser)
 Mowad $ 7.00 None 29%
 (State's appraiser)
 Jury $ 7.00 None 5%
 Judge $12.67 50% 70%

The State contends that the trial judge erred in granting the Wahlders' motion for judgment N.O.V. and in setting aside the jury verdict. They argue that the trial judge weighed the evidence, passed on the credibility of the expert witnesses, and substituted his own determination of the facts for that of the jury.
With respect to the value of the property, the trial judge in his written reasons for judgment found that the jury's award of $7 per square foot was clearly erroneous. After finding that "the jury chose to ignore or disregard the testimony of all the appraisers and the charges offered by the court", the trial judge set aside the jury's verdict. Using only two of the many comparable sales, the trial judge determined that the value of the property was $12.67 per square foot and entered a judgment reflecting that determination.
The standard for determining whether to grant a judgment N.O.V. is clearly established. The case of Campbell v. Mouton, 373 So.2d 237, 239 (La.App. 3d Cir.1979), quoting Boeing v. Shipman, 411 F.2d 365 (5th Cir.1969), explains the standard as follows:On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidencenot just that evidence which supports the non-mover's casebut in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in *236 favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.
A trial court in granting a motion for judgment N.O.V. may not weigh the credibility of the witnesses. Dept. of Transp. & Development v. Ford, 520 So.2d 774 (La.App. 3d Cir.1987), writ denied, 522 So.2d 564 (La.1988). The trial judge could not make credibility determinations, nor can we. Campbell v. Mouton, supra. Making credibility evaluations is one of the primary duties of a jury and the trial court may not take this duty from the jury unless the party opposing the directed verdict has failed to produce sufficient evidence upon which reasonable and fair-minded persons could disagree. Id. at 240. On appeal it is the responsibility of the appellate court to review the decision of the trial court and reverse the judgment N.O.V. if we conclude that the trial court was manifestly erroneous. Dept. of Transp. & Development v. Ford, supra.
After a thorough review of all the evidence in the light most favorable to the State and drawing all reasonable inferences most favorable to the State, we find that the trial court was manifestly erroneous in granting the Wahlders' motion for judgment N.O.V. where the jury's verdict of $7 per square foot directly corresponds to one of the appraisal valuations. Furthermore, the trial judge erred by apparently weighing the credibility of the expert witnesses. We set aside the judgment N.O.V. as to the valuation of the property and reinstate the verdict of the jury.

VALUE OF THE PROPERTY TAKEN
Market value is that price most likely to be agreed upon after free and open negotiation between a willing seller and a willing buyer. State, Dept. of Trans. & Dev. v. Sonnier, 503 So.2d 1144, 1146 (La.App. 3d Cir.1987), writ denied, 506 So.2d 1230 (La.1987). The "comparable sales" method is the preferred manner to compute the market value. Id. The trial judge in the present case so instructed the jury. By this method, appraisers analyze sales prices of similar properties and adjust them in an effort to estimate the value of the subject property. Id.
All four appraisers in this case, and the trial judge in deciding to grant a judgment N.O.V., used the comparable sales method. The difference was that the four appraisers used a number of comparables, while the trial judge limited his comparables to two, the Bonneau Tract and the Petron Tract. The trial judge declared that the other sales used by the appraisers were not true comparables, but that the Bonneau Tract and the Petron Tract were "identical to the subject property in every respect and are true comparables and unequivocally reflect the true value of the subject property." Calculating that the Petron Tract reflected a value of $12 per square foot after time adjustment, and that the Bonneau Tract sold for $12.67 per square foot just six months prior to the taking, the trial court found that the value of the property taken was $12.67 a square foot.
In determining whether the jury's decision met the reasonable men test, it is only necessary to examine the methodology employed by the expert Mowad, for his appraisal of $7 per square foot was what the jury awarded. If his testimony constituted substantial evidence that the property was worth no more than $7 a square foot, the judgment N.O.V. was improper.
John D. Mowad, a real estate appraiser and broker in Alexandria, active in the real estate market since 1976, who had been accepted as a real estate appraisal expert in both federal and state courts, was accepted by the trial judge in this case as an expert in the field of real estate appraisal, both residential and commercial. He testified that he approached the valuation of the subject property by using the three commonly accepted approaches to value, namely, the Market Data Approach, the *237 Cost Approach, and the Income Approach. Using the Cost Approach, he relied on nine comparables ranging in value from $10 a square foot down to $3. He testified that there were not too many sites in Alexandria worth $9.50 to $10 a square foot. He explained that several of these comparables were inferior to the Wahlders' property for various reasons and that certain adjustments were made to these sales, for size, location, and other physical characteristics. He ended up with a value of $7 a square foot that he assigned to the subject property. Using the Market Data Approach, he relied on the Bonneau comparable. This resulted in a substantially identical valuation per square foot, as did a computation utilizing the Income Approach.
Mowad was extensively cross-examined, especially on the Petron and Bonneau comparables. He gave factual reasons why he believed those sale prices were on the high side and not representative of what was going on in the market. He said further, "One sale doesn't make market value." As to the Petron comparable, his expert opinion was that its frontage and extraordinary high traffic count made it superior to the subject property.
It is apparent from a study of Mowad's testimony and report alone without reference to that of the other three appraisers, that reasonable men could find that the subject property should be valued at $7 a square foot.
In his written reasons for judgment N.O.V., the trial judge analyzed the two comparables on which he relied, and concluded that they were the only two comparables that should be considered. Although his analysis was persuasive, and perhaps even a better analysis than that of Mowad (and the other three appraisers), the testimony of the expert Mowad constituted substantial evidence opposed to the motion, and the judgment N.O.V. as to the value of the land was improper.
Turning to the issue of severance damages, the trial judge in his reasons for judgment stated that "... the jury once again chose to ignore the testimony, evidence and law and rendered a verdict that was inapposite with all evidence and law." He found that the jury's verdict of only 5% severance damages to the smaller northern remainder and no severance damages to the larger southern remainder was contrary to the law and evidence and was totally unfounded and erroneous.
Concerning the larger southern remainder, both appraisers for the State testified that there was no severance damage. Recognizing that this remainder was approximately one-half of the size of the entire tract before the expropriation, and that there would be some reduction in access to it, it was nevertheless their opinion that there was still sufficient access and that it was still of sufficient size to retain its value as commercial property. They supported this with the observation that this remainder of 13,991 square feet was almost exactly the same size as that portion of the original tract on which the convenience store/gas station known as Uncle Harvey's was located. They reasoned that this remainder was still of sufficient size and access to retain its highest and best use as commercial property.
The appraisers for the landowners felt that, as a result of the reduced square footage and the reduction of access, there was severance damage, one opining it resulted in a 40% loss and the other a 50% loss.
The jury found no severance damage, indicating that they agreed with the State's appraisers and disagreed with the landowners' appraisers in their opinions and the reasons upon which those opinions were based.
Stating that the jury's verdict was contrary to the law and the evidence, the trial judge agreed with the landowners' appraisers and set severance damages at 50%. The jury's verdict was not contrary to the law and the evidence, because the State's appraisers' testimony constituted substantial evidence. The only way that the trial judge could have rejected the testimony of the State's appraisers, in favor of the testimony of the landowners' appraisers, was to make a determination based on credibility, and this he could not do. Accordingly, we *238 find that the trial judge was clearly wrong in concluding that the jury's verdict was contrary to the law and evidence and that the evidence overwhelmingly supported the Wahlders' position.
Concerning the severance damage to the smaller northern remainder, the trial judge set aside the jury's verdict and entered a judgment reflecting 70% severance damage to that remainder. The jury had awarded only 5% despite unanimous agreement among the four appraisers that there was greater damage, ranging from 29% up to 90%.
The State virtually concedes that this was error on the part of the jury, citing State, Department of Transportation v. Van Willett, 386 So.2d 1023 (La.App. 3d Cir.1980), writ denied 392 So.2d 692 (La. 1980). In that case the trial court had found severance damages in an amount lower than that testified to by any appraiser. On appeal, we said that that was error, inasmuch as the trial court had substituted his own opinion for that of the experts in the assessment of consequential damages. Id. at 1031-1032.
In the present case since the lowest expert valuation was 29%, the jury by deciding only a 5% damage obviously substituted its own opinion for that of the experts just as the trial judge did in his judgment N.O.V. regarding the value of the land taken.
Although conceding that the jury may have exceeded its authority in granting an award of only 5% severance damages, and that therefore the trial court may have been right in granting a judgment N.O.V., the State nevertheless argues from the Van Willett case, supra, that the award can be increased only to the extent of the lowest expert's estimate of damages. We do not agree. The Van Willett case was an appeal from a trial court judgment, and the standard of our review of an abuse of discretion was limited to raising the award to the lowest amount that would not be an abuse of discretion. In the present case, having found that a judgment N.O.V. should be rendered, the trial court was free to render any judgment permitted under the evidence. The trial court's finding of 70% was within the range of the expert opinions, and we find no clear error in that award.
For the reasons stated the judgment of the trial court granting judgments N.O.V. as to the value of the property and severance damages to the larger southern remainder are vacated and set aside, and the jury's awards are reinstated. The judgment N.O.V. of the trial court setting aside the jury's severance damage award to the smaller northern remainder is affirmed, and the award of 70% damages to that remainder is affirmed. Accordingly, the judgment is amended to reduce the total award from $322,672.64 to $185,708.58, for which judgment is rendered herein in favor of the landowners and against the State. The award for costs is affirmed. The landowners will pay the costs of this appeal.
JUDGMENT AMENDED, AND AS AMENDED, AFFIRMED AND RECAST.