600 So.2d 78 (1992)
CITY OF NEW ORLEANS
v.
Barry J. CONDON.
No. 91-CA-1272.
Court of Appeal of Louisiana, Fourth Circuit.
May 12, 1992.
Rehearing Denied June 17, 1992.
*79 Thomas L. Giraud, Giraud, Cusimano & Verderame, New Orleans, for defendant/appellant and intervenor appellants.
Joel P. Loeffelholz, Carol Hart, Asst. City Atty., William D. Aaron, Jr., City Atty., New Orleans, for plaintiff/appellee.
Before KLEES, PLOTKIN and JONES, JJ.
JONES, Judge.
This is an appeal from a judgment allowing the City of New Orleans to expropriate the property of the appellant, Barry Condon, to create a green space public park. Appellant appeals the taking and challenges the amount awarded for the taking. His sister and brother-in-law appeal the dismissal of their petition of intervention.

FACTS
In 1988 the City of New Orleans filed suit to expropriate defendant's property to create a green space public park. The City already owned a lot which was contiguous to the defendant's property. The total area of the property to be expropriated was 1,985.19 square feet. At the trial of the matter in 1988 the parties stipulated the value of the property to be $146,000 and tried the issue of whether a public necessity existed to justify the taking of the property. The intervention of the sister for her alleged loss of a leasehold was also tried at that time. The trial court found a public purpose and dismissed the intervention. This court reversed the trial court solely on the fact that no ordinance had been passed by the City Council authorizing the expropriation. City of New Orleans v. Condon, 539 So.2d 984 (La.App. 4th Cir.1989).
Thereafter, on April 7, 1989, the City Council adopted an ordinance authorizing the City to expropriate the defendant's property for "a public park/green space." On August 23, 1990 the City of New Orleans filed this suit for expropriation. Trial was held on December 11 and 12, 1990 and a judgement was rendered on January 16, 1991 allowing the expropriation.
The land in question consists of approximately 1,985.19 square feet and had a service station located on it. Prior to 1990 the defendant had operated an Exxon Service Station at the location. In April of 1990 Exxon removed its pumps and all underground tanks from the location. Since May 1990 the defendant has used the location to lubricate and service automobiles and to park customers' vehicles.
On January 1, 1986 the defendant entered into a ten year written lease agreement with his sister Cheryl Beck leasing to her "the right to park vehicles on the premises from the hours of 4:30 p.m. until 7:00 a.m. daily." The lease was recorded on April 3, 1989. Ms. Beck paid rent of $400 per month for 1986 and 1987, $440 per month for 1988 and 1989 and $484 per month for 1990. According to the defendant the lease provides for an escalation of rent every two years.
In May, 1990 the defendant and his sister agreed to try to lease their property through Latter and Blum. The realtor from Latter and Blum contacted the City to find out the status of the expropriation case and was told the City was getting ready to go back to Court. The City filed suit again on August 23, 1990. Defendant was served on September 18, 1990 and filed exceptions of no cause of action and no right of action on September 25, 1990. The case was originally set for trial on October *80 17 but was continued to December 11, 1990 at the request of the defendant. On the morning of trial defendant filed an answer and reconventional demand to the petition for expropriation. Additionally, on the morning of trial his sister, Cheryl Beck and her husband filed a petition for intervention to protect their leasehold rights. The case was tried on December 11 and 12, 1990. On January 16, 1990 the Court granted the City's petition to expropriate defendant's property and ordered the City to pay defendant $198,500 for the value of the land and $2,750 for fees of his appraisers and costs of court. The court dismissed the petition of intervention filed by Ms. Beck and her husband. No attorneys fees were awarded. The defendant and the intervenors took a devolutive appeal of the court's judgment.

DISCUSSION
Defendant's argument that the City failed to prove that this land is being expropriated for a public purpose is without merit. The record amply supports the trial court's judgment that the expropriation of land to create a public park/green space is a valid public purpose. In City of New Orleans v. New Orleans Land Co., 136 So. 91 (La.1931) the court specifically stated that the taking of land for enlargement of a public park is for public use and constituted a valid basis for expropriation.
Defendants' argument that the property should have been valued at a higher price is also without merit. At the first trial of this matter in 1988 the parties stipulated that the value of the property was $146,000. At the trial of the matter again in 1990, the trial court found the value of the property to be $198,500 or $100 per square feet. This amount is consistent with the value of recently sold property. The trial court basically found that the highest value and best use for this property was for it to be sold for redevelopment. No one seems to argue with the trial court's conclusion on this matter since even the defendant's own expert testified that the small building located on the property had no particular economic value. Rather, the value of the property was its value as "a vacant site." The city's expert testified that he used seven comparable sales to arrive at the value of the property. He felt the defendant's property was worth $148,000 at the time of the trial. The trial court judge apparently decided to base his valuation on the three most recent sales of land in the area. One lot apparently sold at auction for $55 per square foot and the current asking price at the time of trial was only $75 per square foot. Another lot sold for $100 per square foot and another lot sold for $174 per square foot. The City's expert described the sale of the lot for $174 per square foot as an aberration. Defendant's expert also apparently conceded that the $174 per square foot sale was an aberration. Thus, the use of the $100 value appears to be correct.
Additionally, the defendant also argues that the trial court should have accepted its expert's use of an income commercial/development approach as opposed to a comparable sales approach to value the land. He argues that his expert was more independent and less biased than the city's expert. However, issues of credibility of expert witnesses should properly be decided by the trial court, unless no evidence exists to support their opinions. In this case the opposite is true. Defendant cites no cases wherein the income/commercial development approach was used by the court to value property in an expropriation case. However, the jurisprudence is replete with cases that state that the preferred method of valuing property in expropriation cases is the comparable sales approach. See Board of Com'rs of Lake Borgne Basin Levee District v. Acosta, 562 So.2d 15 (La.1990).
The trial court refused to place a separate value on the sister's leasehold interest and dismissed her intervention. The dismissal of the intervention in the current litigation was undoubtedly influenced by the findings he made in the first suit. In that suit he found that her net income totaled $3600 for 1986, $4660 for 1987, and $1502 for the first three months of 1988. She worked 35 hours per week. The court concluded that some labor costs had to be *81 considered in assessing the value of the business. The court went on to conclude that even if he ascribed minimum wages for her services; her business was a losing proposition. This conclusion appears to be reasonable in view of the fact that she was allegedly paying the brother $400 to $480 per month pursuant to her lease. Therefore, we find no manifest error in the trial court's decision to dismiss her intervention.
Finally, the defendants complain about the trial court's failure to award attorneys fees. The judgment is silent as to this matter. The record indicates that the appellant filed an answer to the City's petition on the day of trial and that the answer contains a prayer for reasonable attorneys' fees. Generally speaking, the trial court has the discretion to award attorneys fees in expropriation cases. La. R.S. 19:109, 19:8; City of Lafayette v. Delhomme 401 So.2d 1044 (La.App. 3rd Cir. 1981); Shell Pipeline v. Sarvar, 442 So.2d 884 (La.App. 3rd Cir.1983); Pointe Coupee Electric v. Mounger, 447 So.2d 1104 (La. App. 1st Cir.1984). However, in cases where the amount finally awarded for the value of the property for the taking is substantially higher than the amount offered by the authority initiating the taking, attorneys' fees should be paid. The only apparent offer made by the City for the property was for $146,000 plus $3500 for appraisal expenses. That offer was allegedly contained in a letter dated March 23, 1989. The trial court ultimately ordered the City to pay $198,500.00 plus $2,750. The difference in the amount offered as the amount due for the value of the property and the amount awarded by the trial court for the value of the property is $52,500. Defendant argues that pursuant to Louisiana Resources Co. v. Noel, 499 So.2d 1016 (La.App. 3rd Cir.1986), writ denied 501 So.2d 200 and Valley Elec. Membership Corp, Inc. v. Wallace, 465 So.2d 986 (La. App. 3rd Cir.1985), this court should award attorney's fees of one-third the difference in the amount offered by the City as the value of the property and the ultimate award for the value of the property. However, the general rule is that the court may award reasonable attorneys fees. The current record does not contain sufficient information for us to decide the amount of attorneys' fees that should be paid in this case. The matter of reasonable attorneys fees is to be decided by utilizing the following criteria: 1. the ultimate result obtained; 2. the responsibility incurred; 3. importance of the litigation; 4. amount of money involved; 5. extent and character of the work performed; 6. legal knowledge, attainment and skill of the attorneys; 7. number of appearances made; 8. intricacies of the facts involved; 9. diligence and skill of counsel; and 10 the court's own knowledge. See State, Through the Department of Transportation and Development v. Williamson, 557 So.2d 731 (La. App. 2 Cir.1990); State, through the Department of Transportation and Development v. Hecker, 493 So.2d 125 (La.App. 5th Cir.1986), writ denied 494 So.2d 325 (La. 1966). Since the record contains no evidence related to these factors, we must remand the case to the trial court to determine attorneys fees. See Williamson, supra, and State, Through the Department of Transportation and Development v. Frabbiele, 372 So.2d 234 (La.App. 4th Cir. 1979).
For these reasons, the judgment of the trial court allowing the City of New Orleans to expropriate the defendant's property for the total sum of $198,000 plus $2,7500 is affirmed. The case is remanded to the trial court for a determination of attorneys fees.
AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.