JOY COSSICH LOBRANO, Judge.
|, This case arises from a so-called “quick-taking” of property owned by defendant/appellee, Michael P. Villavaso (“Villavaso”). The Board of Supervisors of Louisiana State University Agricultural and Mechanical College (“LSU”) filed a Petition for Expropriation in the Civil District Court for the Parish of Orleans against Villavaso on April 8, 2011, pursuant to La. R.S. 19:1, et seq. and 19:141, et seq., to facilitate the construction of a new academic medical center. The subject of LSU’s expropriation was Villavaso’s property located at 1837 Tulane Avenue and 318 South Roman Street (“the property”) in New Orleans. The property is located across from St. Joseph Church near the Superdome, Claiborne Avenue, the Central Business District corridor/biomedical district, LSU and Charity School of Nursing, and the Veterans Administration Hospital, and is zoned C-l-A, general commercial district.
At the time of the taking, the property improvements consisted of shell and asphalt paving, parking bumpers, posts, and chains. Like the prior owner, Villavaso had used it for special events parking and some daily parking for the |aeleven years that he owned the property. Villavaso’s special events parking fees were competitive with others, which charged up to $40.00 per car. Villavaso testified that the property had been openly used for parking by himself and the former owner for well over a decade without interference by the City of New Orleans or permitting or enforcement agencies. Villavaso therefore concluded that the parking use was legal under zoning or, at a minimum, was grandfathered in as a non-conforming use. Vil-lavaso paid property taxes on the property and income taxes on the parking business revenue.
In May 2010, after Villavaso was first alerted to the forthcoming expropriation, Villavaso contacted real estate appraiser Jimmie Thorns. Thorns had previously worked for LSU appraising property for the academic medical center project, and Villavaso hoped to negotiate a sale to LSU prior to the taking. Thorns provided a valuation for the property of $247,000.00 *761 (approximately $33.00 per square foot). Villavaso also began looking for replacement properties, and testified at trial that similar, available properties were listed in the $33.00 to $34.00 per square foot range. Villavaso provided Thorns’ valuation for the property to LSU, but LSU refused to purchase the property at the value assigned by Thorns.
'Upon filing the Petition for Expropriation on April 8, 2011, LSU deposited into the registry of the district court the amount of $172,000.00, which it alleged was just compensation for the property, representing the full extent of Villavaso’s loss,as determined by two Louisiana certified general real estate appraisers, Kevin Hilbert (“Hilbert”) and Michael Truax (“Truax”), chosen by LSU.
laOn April 15, 2011, without notice to Villavaso, LSU entered on to the property, grading it and demolishing the parking improvements, prior to the transfer of title, which occurred on April 25, 2011.
On May 26, 2011, Villavaso filed an Answer and Reconventional Demand seeking additional compensation, including compensation for the land and improvements taken, economic losses, including loss of income, and general damages for mental anguish, loss of use, inconvenience and loss of enjoyment. He did not challenge the public purpose or necessity of the taking. Villavaso retained two experts: Thorns, a real estate appraiser, and Charles Theriot (“Theriot”), a Certified Public Accountant and Forensic Accountant, to support his quantum claim. Thorns issued a report utilizing an appraisers’ comparable sales approach and determined that the market value of the property was $247,000.00 as of the date of taking.
On September 28, 2012, Theriot issued a separate report in which he considered Villavaso’s business losses due to the expropriation resulting in the closure of Vil-lavaso’s parking business. In his report and in his trial testimony, Theriot acknowledged that his report did hot include the appraised value of the real estate. He valued business losses in the amount of $144,818.00. Nearly one year after' the issuance of Theriot’s report, 'over Villava-so’s objections, LSU submitted the August 13, 2013 three-page rebuttal report by Henry “Hank” Tatje (“Tatje”), an appraiser, in response to Theriot’s report, which evaluated Theriot’s report under the Uniform Standards of Professional Appraisal Practice (“USPAP”).
|4On April 9, 2014, Villavaso filed a Dau-bert Motion to Exclude the Testimony of Hank Tatje arguing that Tatje was unqualified as an expert to rebut Theriot’s Lost Profits Report and should not be allowed to testify because he is an appraiser rather than a CPA, and that to allow his testimony would' result in undue prejudice. After a hearing on Villavaso’s Daubert motion on May 14, 2014, the district court issued a Judgment on May 30, 2014 granting the Daubert motion, and excluding Tatje from testifying as LSU’s expert.[1]
At the same time that it granted Villava-so’s Daubert motion, the district -court also granted in part LSU’s motion in limine to exclude evidence relating to Villavaso’s mental anguish, limiting the testimony only to that mental anguish suffered between the time of the initial trespass on or about April 15, 2011 until the actual expropriation on April 25, 2011.
*762 The ease was tried to the bench on June 24 and 25, 2014. At trial, during LSU’s cross-examination of Theriot, counsel for LSU attempted to introduce Villavaso’s tax returns for the years 2006 through 2010. Counsel for Villavaso objected on the grounds that while the returns had been produced in discovery not later than 2012, LSU had never listed them as an exhibit. In addition, counsel for Villavaso argued that since the returns were Villava-so’s, while they might be appropriate to introduce in connection with Villavaso’s testimony, they were not Ran appropriate subject'for Theriot’s testimony. The district court sustained Villavaso’s' objéction, and allowed LSU to proffer the returns in question.
Following the trial, the district court ruled that Villavaso had demonstrated that the $172,000.00 deposited by LSU was insufficient compensation for his losses, and that he was entitled to, an additional $78,000.00 ($250,000.00 minus the $172,000.00 deposited into the registry of the Court) for the property taken; $2,820.00 for the improvements taken; $144,818.00 for business losses; and $50,000,00 for the mental anguish suffered as a result of the.trespass, plus legal interest at five percent from April 25, 2011. Following a hearing to set attorney’s fees held on August 27, 2014, the district court awarded Villavaso attorney’s fees in the amount of $165,000.00.
On appeal, LSU asserts that the district court erred in the following particulars:
(1) The district court’s finding that the value of the property taken as of the date of taking, April 25, 2011, was $250,000.00 ($78,000.00 moré than LSU deposited);[1]
(2) The district court’s findings that Vil-lavaso’s business losses as a result of the taking were valued at $144,818.00, that the testimony of Tatje should be excluded, and that Villavaso’s tax returns, which LSU sought to introduce at trial, should be excluded;
(3)The district court’s finding that Vil-lavaso suffered compensable mental anguish damages valued at $50,000.00; and
, [ fi(4) The district court’s award of attorney’s fees in the amount of $165,000.00 should be reduced if there is any reduction in damages award.
Villavaso answered the appeal, seeking an increase in'the amount of attorney fees and costs awarded by the distinct court, to compensate him for fees and costs incurred post-trial on appeal.
DISCUSSION
“A court of appeal may not set aside a trial court’s findings of fact in the absence of manifest error or unless they are''clearly wrong.” Allerton v. Broussard, 2010-2071, p. 3 (La.12/10/10), 50 So.3d 145, 146-47 (citations omitted). More specifically, “[t]he trier of fact’s factual determinations as to the value of property and entitlement to any other damages in an expropriation proceeding will not be disturbed'on appeal absent ... manifest error.” Board of Sup’rs of Louisiana State University and Agr. & Mech. College v. 1732 Canal Street, L.L.C., 2012-1370, p. 3 (La.App. 4 Cir. 6/19/13), 159 So.3d 470, 472, writ denied, 2013-2383 (La.1/10/14), 130 So.3d 330. Reasonable evaluations of credibility and' reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Allerton, 50 So.3d at 146-47. The rule that questions of credibility are for the trier of fact applies to the evaluation of expert testimony, unless the stated reasons of the expert are patently unsound. Natchitoches Port Comm’n v. Deblieux & Kelley, Inc., 99-313, p. 19 (La.App. 3 Cir. 3/22/00), 760 So.2d 393, 405, writ denied, 2000-1121 (La.6/2/00); 763 So.2d 601.
*763 |7The power of eminent domain is inherent in government, both state and federal. U.S. Const, amend. V; La. Const, art. I, § 4. The government has the constitutional authority to delegate this power to certain classes of entities, such as LSU, in an effort to serve public necessity and convenience.
However, Article I, § 4(B)(5) of the Louisiana Constitution of 1974 provides that a landowner in an expropriation case “shall be compensated to the full extent of his loss,” and that “the full extent of his loss shall include, but not be limited to, the appraised value of the property and all costs of relocation, inconvenience, and any other damages actually incurred because of the expropriation.” This has been interpreted to mean that a landowner whose property is expropriated is entitled to be placed in the same pecuniary position in which he would have been if the property had not been taken. State Dept. of Highways v. Constant, 369 So.2d 699, 702 (La.1979). The expansive language has prompted at least one court, when referring to a landowner’s due in a takings case, to abandon the term “just compensation” in favor of the more comprehensive “full compensation.” See, e.g., State, Dept. Of Transp. & Dev. v. Sonnier, 503 So.2d 1144, 1146 (La.App. 3d Cir.1987), writ denied, 506 So.2d 1230 (La.1987).
Moreover, “[s'Jince expropriation proceedings derogate from the right of individuals to own property, the law goy-erning these proceedings is strictly construed against the expropriating authority.” State v. Estate of Davis, 572 So.2d 39, 42 (La.1990).
I sin the instant case, four components of Villavaso’s damages award are in issue: (1) the fair market value of the property taken; (2) the past and future business losses resulting from the expropriation; (3) mental anguish damages resulting from LSU’s trespass on Villavaso’s property; and (4) attorney fees incurred defending the expropriation suit. We consider each in turn.
1. Value of the Property
LSU contends that the district court’s award of $250,000.00 for the fair market value of the property was erroneous, becáúse Villavaso’s expert overvalued the property by using inappropriate com-parables. The record reflects that both sides .introduced experts at trial, and the district court adopted the conclusion of Villavaso’s over LSU’s, based, inter alia, on its -finding that Villavaso’s expert was more unbiased.
Villavaso’s expert, Jimmie Thorns, based his conclusions upon seventeen comparable sales located on Tulane Avenue and Canal Street and in close proximity to the subject property, and concluded that the property had a fair market value of $33.00 per square foot, or $250,000.00. The court took specific note of the fact that Thorns had' extensive experience appraising property in this corridor, and in fact, LSU had itself hired Thorns and accepted his appraisals for the academic medical center project, demonstrating a unique lack of bias on his part in determining the value of this property. The court observed that Thorns had complied with every aspect of USPAP and appraisal ethics in the preparation of his |Bappraisal, and thus had no reason to doubt Thorns or his value conclusions in the case.
In contrast, the court was unpersuaded by LSU’s two expert appraisers, Truax and Hilbert, who the court determined based their valuations on fewer compara-bles, some much further away from the subject property than those used by Thorns. Using six comparables, Truax concluded that the fair market value of the *764 property was $172,000.00, or $22.50/per square foot. Hilbert used eight sales to determine that the value of the property was $171,900.00, or $22.50/per square foot. Both made quantitative adjustments to their comparable sales and, in some instances, their comparable sales were adjusted as much as 35%. The court was impressed by the fact that Truax and Hilbert have worked primarily for LSU, and thus lacked the same objectivity possessed by Thorns.
LSU argues with respect to this finding that the district court erred because while Truax and Hilbert used fewer compara-bles, they were more accurate, and the adjustments made aided rather than reduced their accuracy. We find that the district court’s finding was not manifestly erroneous or clearly wrong. The district court’s ruling was a pure credibility call, in which it articulated a rational basis for choosing one viewpoint over the other. Accordingly, under the applicable standard of review, the district court’s ruling as to the value of the property will not be disturbed.
| m2. Other Damages — Business Losses
LSU also contends that the district court erred in awarding Villavaso business losses due to the closure of his pai-king business because it amounted to an impermissible double recovery. We disagree. The Louisiana Supreme Court has found that landowners are not limited to the market value of the property taken, and businesses losses are recoverable in certain cases, based upon a consideration of the totality of the circumstances surrounding the expropriation. See, e.g., State Dept. of Highways v. Constant, 369 So.2d 699 (La.1979); State, Dept. of Trans. & Dev. v. Dietrich, 555 So.2d 1355 (La.1990).
In the bellwether case of State Dept. of Highways v. Constant, the Department of Highways expropriated the loading and parking area of a marina, essentially destroying the marina business operations on the parent tract. Id. at 702. The district court awarded an amount that exceeded the market value of the parent tract prior to the taking, and the appellate court reversed, finding that the landowner’s loss could not exceed the fair market value of the tract. Id. The Supreme Court reversed, authorizing an award to recover the replacement cost of a new marina, because “the evidence ... [did] not prove any other method by which the owners may be placed in as good a position pecuni-arily as they enjoyed prior to the taking. Without the replacement of them loading area, their marina business operations will be substantially destroyed.” Id. In so holding, the Court recognized that the parcel taken was indispensable to the landowners’ business activities and that its unique location gave the landowners a competitive business advantage. Id. |nat 703-04. The Supreme Court also held that the Constitution “require[s] that the landowners be fully compensated, without specifying any method by which to determine such compensation.” Id. at 705. Thus, the Supreme Court has endorsed an approach that makes a landowner truly whole, without prescribing a specific methodology to determine such compensation.
In the same vein, the Supreme Court has specifically recognized “the right to receive compensation for economic damage sustained by the landowners’ businesses resulting from [an] expropriation.” Dietrich, 555 So.2d at 1359. In Dietrich, the expropriation of a portion of land resulted in a portion of the landowner’s property being bisected in such a way that the two halves could not support the landowner’s herd of cattle, thereby reducing the profitability of the landowner’s cattle operation *765 and related slaughterhouse business. Id. at 1357. The taking ultimately resulted in the distress sale of some of the cattle and the eventual abandonment of the cattle operation, and corresponding business losses to the slaughterhouse. Id. at 1357-58. Following a jury award which included amounts for the property taken, severance damage to the remainder, and past and future economic losses, the appellate court reversed the past and future economic losses finding them unsupported by law or fact. Id. at 1358. The Supreme Court reversed, holding that “[w]here economic losses suffered by a business have been proven, damages for incidental and consequential loss must be awarded to fully compensate the owner.” Id. It further found that “[wjhere an expert’s well-reasoned testimony supports an award of damages, where it is uncontradicted and, | ^particularly, where it is accepted by the trier of fact, the property owners should prevail.” Id. at 1359.
In the case sub judice, Villavaso had two assets taken from him in the expropriation: his land and his parking business. And while Thorns’ analysis of the fair market value of the land quantifies Villavaso’s loss with respect to the land, it did not include his business losses. In so holding, we specifically recognize that in this case, the property was both unique in nature due to its location, and indispensable to Villavaso’s business. See Constant, 369 So.2d at 706. As Villavaso testified at trial, his property was situated in a location convenient to the Superdome with exceptional access to the interstate, both I-10 East and West. The location enabled customers to quickly access the interstate, bypassing much of the game day and event traffic. As a result, he had cultivated a network of regular customers who sought out his parking lot in particular for its unique features. He also testified that he had looked for, but had been unable to find, a comparable location to relocate his business. Thus, by taking Villavaso’s land, LSU also effectively took his business, and under our Constitution, Villavaso is entitled to be fully compensated for that loss.
In quantifying Villavaso’s business losses, the district court accepted the testimony of Theriot, Villavaso’s expert. Theriot has been qualified numerous times in Louisiana state and federal courts as an expert Certified Public Accountant and as an expert in forensic accounting, and specifically for the determination of business losses. Theriot calculated business losses based on two scenarios — one h abased on the actual parking and rates Villavaso was charging at the time of the taking, and one based on the addition of daily parking and fewer cars parked for special events, but at an increased special event rate. Theriot then made projections out to 4 years and 20 years, and ultimately decided the fairest method was to use the second scenario, projected out 4 years, and discounted to present value. Theriot chose this based on his conclusion that the 20-year span was too speculative, and the fact that given Villavaso’s extensive experience operating other parking lots, an eventual conversion of the parking lot to accommodate both daily and special events parking was very probable. Additionally, the $7.00/per day rate and $35/per special event rates that Mr. Villavaso intended to use were competitive. This resulted in estimated business losses of $144,818.00. We find that the district court was not manifestly erroneous in adopting the amount recommended by Theriot.[2]
*766 LSU also urges this Court to reverse the district court’s exclusion of its expert, Tatje, an argument which was previously urged through an application for supervisory writs, which this Court denied.[3] Approximately one year after Villa-vaso filed Theriot’s expert report, LSU retained Tatje as a rebuttal witness to Theriot. The district court excluded the testimony of Tatje, an appraiser, based on 114its finding that Theriot, a Certified Public Accountant, had not opined on the value of the building (which would fall within the realm of expertise of an appraiser), but on the quantification of business losses (in his capacity as an accountant). The district court specifically noted that Theriot did not render any opinions related to the market value of the real estate, solely considering the potential income of Villavaso’s parking business.
■ The district court- “has wide discretion in determining whether to allow a witness to testify as an expert, and his judgment will not be disturbed by an appellate court unless elearly erroneous.” Versluis v. Gulf Coast Transit Co., 2008-0729, p. 5 (La.App. 4 Cir. 7/29/09), 17 So.3d 459, 463. Given the district court’s vast discretion on this matter, we cannot find that its exclusion of Tatje was clearly erroneous. Further, we have reviewed the proffered report and testimony and find that it would not have changed the outcome of the trial. Thus, its exclusion was not prejudicial, and therefore does not warrant reversal. See, Stewart v. Ice, 2007-871, p. 7 (La.App. 4 Cir. 4/9/08), 982 So.2d 928, 933.
On cross-examination of Theriot, LSU addressed the issue of whether Villavaso needed permits for his parking business. LSU posits that parking is an illegal use of the property, so Villavaso actually has no legitimate business losses from parking revenue. LSU also argues that Theriot’s conclusions- were improperly based on speculation about future business losses from daily parking because" up until the taking, Villavaso has used the lot approximately 17 times per year for event parking.
| iJn its Reasons for Judgment, the district court noted that Villavaso did not have a conditional use or special events permit to park on the property. However, the court also noted that the testimony and evidence introduced at trial did not establish that Villavaso was required to have any specific permits. Witnesses testified that Villavaso had parked cars on the property for nearly 11 years, and in that time had never been cited by any city, state, or governmental authority for illegally parking cars; that the property was used as a parking lot before Villavaso purchased it; arid that parking was allowed under the “Cl-A” zoning classification- of the property. The district court also gave weight to the fact that LSU’s own appraiser, Truax, assumed in his appraisal report that all required licenses, consents, and permits had been or could be obtained for special events parking on the property. *767 Moreover, Theriot testified that even if permits were required, the fact that Villa-vaso did not have one would not necessarily affect his calculations at all, because it would not necessarily follow that a permit requirement would cause Villavaso to cease his business activities, because it was unclear if the requirement would be enforced, or that Villavaso could not easily obtain a permit.
We find that LSU failed to’produce any evidence to support its argument that Villavaso has no business losses because he lacks a required permit. Rather, we note that, in an expropriation , case, “[a]s in other areas of remedy where damages are not susceptible to scientific measurement, the trial court is given wide latitude and great discretion in ascertaining the precise amount due to an injured property owner. The trial court’s factual determination should not be disturbed on appeal absent manifest error.” Sonnier, 503 So.2d at 1146. Finding that the district court was not manifestly erroneous in fixing the amount of business losses due to Villavaso in the amount of $144,818.00, we affirm the district court’s award.
I m3. Other Damages — Mental Anguish
The district court also awarded Villavaso $50,000.00 for the ten days of mental anguish he suffered as a result of the pre-expropriation trespass on his property (by entering, clearing, and grading it on April 15, 2011, prior to title transfer which occurred on April 25), under La. C.C. art. 2315, noting that “[w]hen the expropriating authority is considered a bad faith trespasser, it can be liable for resultant damages under article 2315.” Williams v. City of Baton Rouge, 98-1981, p. 9 (La.4/13/99), 731 So.2d 240, 248.
LSU contends that Villavaso is not entitled to any mental anguish award, suggesting it was not a bad faith trespasser because it did not enter Villavaso’s land illegally prior to the title transfer. The district court made a factual finding based on the evidence and testimony (which included date-stamped photos from April 15, 2011) that LSU entered Villavaso’s property on or before April 15, 2011, and its agent “removed various items, including but not limited to parking blocks, chain links, and cement postsj and proceeded to grade the property with dirt,” notwithstanding the fact that LSU did not accomplish title transfer until April 25, 2011, thereby committing an impermissible trespass. LSU did not present any testimony or evidence to rebut the fact that Villavaso still owned the property when the trespass occurred. The court found that Villavaso suffered mental anguish as a proximate cause and/or consequence of the impermissible trespass. The district court specifically noted “that when Mr. Villavaso testified about showing up at his property and seeing his property being graded and his items having been removed, the Court observed he was clearly unnerved and emotionally upset even three years after the taking. As such, he should be entitled to recover for these damages.”
117The district court premised the amount of its award on Williams, supra. In Williams, Baton Rouge officials built three drainage ditches across plaintiffs’ property without their consent or legal authority. The Supreme Court upheld the district court’s award of mental anguish damages for the trespass, but reduced it and made an award to two classes of plaintiffs based on their degree of connection to the land. Williams, 731 So.2d at 251. Class I plaintiffs lived on the land at the time of the trespass; Class II plaintiffs did not live on the land, but grew up on the land, visited their family on the land, and felt a tie to the land. Class I plaintiffs *768 received awards from $12,500.00 to $35,000.00; Class II, from $2,000.00 to $5,000.00. Id. at 252.
In the instant-case, the district court analogized Villavaso’s situation to that of the Class I plaintiffs, because he actually owned the property at the time of the impermissible trespass and was directly affected. The court also emphasized that it had observed that Villavaso was clearly unnerved and emotionally upset even three years after the taking. Accordingly, it found an award for mental anguish damages of $50,000.00 appropriate. LSU argues that Villavaso’s circumstances are more analogous to a Class II Williams plaintiff, and thus the $50,000.00 award is excessive.
We will not disturb the district court’s factual finding that LSU committed an impermissible trespass. We also acknowledge that the district court judge has great, even vast? discretion in fixing damage awards for emotional distress due to property damage. Holzenthal v. Sewerage & Water Bd. of New Orleans, 2006-0796, p. 39 (La.App. 4 Cir. 1/10/07), 950 So.2d 55, 79, writ denied, 2007-0294 (La.3/30/07), 953 So.2d 71, citing Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993). However, we find that the district court erred in its finding 118that Villavaso’s situation was analogous to the Class I Williams plaintiffs, who had lived on the land for years, and for whom it was the center of gravity for family events and reunions. Rather, we find that an award of $15,000.00 for mental anguish, which has not required any medical or psychiatric treatment, is appropriate.
4. Attorney’s Fees
The district court awarded Vil-lavaso $165,000.00 in attorney’s fees. In making a fee award in an expropriation case, “[t]he trial court’s discretion is great and will not be disturbed in the absence of a clear abuse of that discretion.” State v. Miss Chub, L.L.C., 47,054, p. 4 (La.App. 2 Cir. 4/11/12), 92 So.3d 422, 425, citing City of Baton Rouge/Parish of East Baton Rouge v. Broussard, 2002-0166 (La.App. 1 Cir. 12/31/02), 834 So.2d 665, writ denied, 2003-0652 (La.5/30/03), 845 So.2d 1056.
LSU argues that the right to be awarded attorney’s fees in an expropriation case is based upon the difference between the amount deposited in the court, and the amount ultimately determined to be just compensation. Moreover, LSU claims that fees should only be awarded for appeals if the appeal is successful. Thus, LSU argues, if on appeal the award is reduced, a corresponding reduction in the attorney’s fees is warranted.
Villavaso answered LSU’s appeal, countering that he is entitled to an increased fee award to reimburse fees incurred since the trial and in this appeal. In making his claim, Villavaso contends that the district court’s award of fees and costs should not be based solely upon the difference in the amount deposited compared to the ultimate award, but rather upon an application of the factors set forth in State, Dep’t of Transp. & Dev. v. Williamson, 597 So.2d 439, 442 (La. 1992),[4] and that the award may only be reduced based on a showing of abuse of discretion.
*769 Under La. R.S. 19:8(3), governing expropriation:
Immediately after compensation has been determined, the plaintiff shall, upon motion of the defendant, present evidence as to the highest amount it offered the defendant for the property and severance damages, if any, prior to the trial on the merits. After hearing evidence on the issue, the court shall determine the highest amount offered. If the highest amount offered is less than the compensation awarded for the property and severance damages, if any, the court may award reasonable attorney fees to the defendant.
The highest amount offered to Vil-lavaso was $172,000.00. We find that Vil-lavaso is entitled to compensation in the amount of $412,638.00,[5] a substantially higher amount than originally offered by LSU.[6] “[I]n eases where the amount finally awarded for the value of the property for the taking is substantially higher than the amount offered by the authority initiating the taking, attorneys’ fees should be paid.” City of New Orleans v. Condon, 600 So.2d 78, 81 (La.App. 4 Cir. 5/12/92), writ denied, 605 So.2d 1130 (La.1992). Therefore, we find that the district court did not abuse its discretion in making the fee award.
However, we also note that the award for mental anguish has been reduced on appeal, suggesting that a corresponding reduction in fees is warranted. We find that any reduction in fees that this remittitur would justify is offset by fees Loattributable to the appeal. Therefore, we affirm the district court’s award of $165,000.00 for attorney’s fees, and deny Villavaso the additional fee award prayed for in the Answer to the appeal. '
In conclusion, we affirm' the district court in all respects, except that we reduce the award for mental anguish damages from $50,000.00 to $15,000.00. We deny the relief prayed for in Villavaso’s Answer to the appeal.
AFFIRMED IN PART, REVERSED IN PART, ANSWER TO APPEAL DENIED.

. LSU filed an application for supervisory writs to this Court, seeking review of the district court’s granting of the Daubert motion. The writ application was denied. Board, of Sup’rs of Louisiana State University and Agr. & Mech. College v. Villavaso, unpub., 14-606 (La.App. 4 Cir. 6/18/2014).

. We also find no error in the district court’s exclusion of Villavaso’s income tax returns in connection with Theriot's testimony. Our review reflects that while the returns were produced in the course of discovery not later than 2012, they were never listed as exhibits, *766 and LSU attempted to introduce them for the first time during Theriot’s testimony at the trial on June 25, 2014. Counsel for Villavaso argued then that the returns were Villavaso’s, so that while some basis may exist for Villava-so to testify regarding the returns, counsel objected to their late introduction in the course of Theriot's testimony. The district court agreed. [Djeterminations to admit or exclude evidence will not be reversed on appeal absent an abuse of [the trial judge’s] wide discretion.” Munch v. Backer, 2010-1544, p. 3 (La.App. 4 Cir. 3/23/11), 63 So.3d 181, 185. We have reviewed the proffered evidence, and under the circumstances,, we find-that this ruling' was not an abuse the district court’s vast discretion,

. See supra, note 1.

. Under Williamson, "[factors to be taken into consideration in determining the reasonableness of attorney fees include: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) amount of money involved; (5) extent and character of the work performed; (6) legal knowledge, attainment, and skill of the attorneys; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) the court's own knowledge.” 597 So.2d at 441-42,

. This represents $250,000,00 for the fair market value of the property, $2,820.00 for the improvements thereon, $144,818.00 for business losses, and $15,000.00 for mental anguish.

; In this case, not only is the final award amount substantially higher than the amount offered by LSU, but a year before the expropriation, LSU rejected an offer to purchase the property for the fair market value as determined by Jimmie Thorns, an expert who LSU has itself retained in the past in connection with the academic medical center project. ... ■