JAMES F. McKAY III, Chief Judge.
|! This case arises out of a disputed insurance claim for business interruption losses caused by Hurricane Katrina. The defendant, AXIS U.S. Insurance Company a/k/a AXIS Reinsurance Company, appeals a trial court judgment where the jury awarded the plaintiffs, Citadel Broadcasting Corporation and Citadel Broadcasting Company, a total damage award of $11,813,976.00. On appeal, we affirm in part, vacate in part, and remand in part.
FACTS AND PROCEDURAL HISTORY
On August 29, 2005, when Hurricane Katrina made landfall, it caused widespread damage to businesses and residences throughout the New Orleans area. At the time of Katrina, Citadel Broadcasting Corporation and Citadel Broadcasting Company (Citadel) owned and operated three radio stations that broadcast in and around New Orleans: KKND (102.9 FM), KMEZ (106.7 FM), and WDVW (92.3 FM). All three radio stations suffered physical damage from Katrina and all were off the air for varying periods of time. WDVW was off the air for seventeen (17) days. KMEZ was off the air for thirty-two (32) days. KKND was off the air for |2one hundred thirty-four (134) days. Prior to the hurricane, Citadel had obtained a comprehensive insurance policy, with a policy period of January 1, 2005 to January 1, 2006, from AXIS Surplus Insurance Company a/k/a AXIS Reinsurance Company (AXIS). The policy covered both physical damages and business interruption (BI) losses. The policy also insured against the loss of contingent business interruption income (CBI). Both ordinary BI and CBI losses were covered under a three hundred *474 sixty-five (365) day extended period of indemnity (EPI) provided for by the policy.
In the aftermath of the hurricane, Cita-, del filed a claim with AXIS. Initially, AXIS paid Citadel $414,092.00 (after deductible) for all its Hurricane Katrina property damage and $1,277,760.00 for its business interruption lost profits during the period of restoration for its three radio stations. AXIS also paid Citadel’s loss adjustment expenses in the amount of $250,787.00 (the amount Citadel paid to AON Risk Services, Inc. of Georgia (AON) to calculate and present Citadel’s insurance claim to AXIS). However, AXIS refused to pay Citadel’s ordinary BI claims during the EPI or any part of Citadel’s CBI claims. Then, AXIS denied coverage outright, asserting that Exclusion K of its policy applied, and that Citadel’s CBI claims were not covered because Citadel’s listeners were not its customers.
Thereafter, Citadel sued AXIS for breach of the insurance contract and insurance “bad-faith” arising out of a Hurricane Katrina claim for lost profits. Following a six-day trial in November of 2018, the jury returned a verdict in | ¡¡Citadel’s favor. The jury awarded Citadel $3,273,237.00 for all lost profits during the three hundred sixty-five (365) days after each of the three radio stations had returned to operation. The jury awarded $2,383,751.00 for CBI losses subsequent to the three hundred sixty five (365) days through June 30, 2007. The jury also awarded $250,000.00 for the trial expert fees covered under the insurance contract. Additionally, the jury found that AXIS committed insurance “bad-faith” pursuant to La. R.S. 22:1892 and awarded a penalty of $2,953,494.00 plus attorneys’ fees in the amount of $2,953,494.00. On December 10, 2013, the trial court entered judgment on the jury’s verdict. AXIS filed a motion for a judgment notwithstanding the verdict and alternative motion for a new trial on December 19, 2013, which the trial court denied the next day. Thereafter, AXIS appealed from this judgment.
DISCUSSION
On appeal, AXIS raises the following assignments of error: 1) the trial court improperly entered judgment awarding lost profit damages to Citadel of approximately $5.9 million although Citadel provided no evidence that the lost profits were caused by a covered event, but rather only presented incorrect argument that all purported lost profits were covered regardless of cause; 2) the trial court improperly entered judgment awarding punitive “bad-faith” damages of $2,953,494.00 when it is beyond dispute that AXIS had a justified and reasonable basis to deny coverage and to dispute the amount of lost profit damages; 3) the trial court improperly entered judgment awarding $2,953,494.00 in attorneys’ fees Lwhen there was absolutely no evidence offered of Citadel’s attorneys’ fees; 4) the trial court improperly entered judgment awarding “Loss Adjustment Expenses” for $250,000.00 in costs incurred by Citadel in retaining a trial expert although the costs of retaining a trial expert are not covered under the plain terms of the “Loss Adjustment Expenses” provision; 5) the trial court abused its discretion in failing to strike the expert testimony of Mr. Christopher Brophy; and 6) the trial court abused its discretion by failing to grant AXIS’s alternative motion for a new trial.

Causation

In its first assignment of error, AXIS contends that Citadel failed to prove that its lost profits were caused by a covered event and therefore, the jury erred in awarding Citadel approximately $5.9 million for lost profits. Essentially, AXIS argues that Citadel failed to prove that *475 certain losses were a direct result of Hurricane Katrina and covered by its policy.
Citadel only needed to prove its business interruption losses with “reasonable certainty.” See La Louisiane Bakery Co. v. Lafayette Ins. Co. 09-825, p. 28 (La.App. 5 Cir. 2/8/11), 61 So.3d 17, 34. Proof of such losses need only be as precise as circumstances in a particular situation allow. See Maloney Cinque, L.L.C. v. Pacific Ins. Co., 11-0787, p. 18 (La.App. 4 Cir. 1/25/12), 89 So.3d 12, 25. Broad latitude is given in proving lost profits because this element of damages is often difficult to prove and mathematical certainty or precision is not required. Id.
|fiTo the contrary, AXIS asserts that Citadel needed to prove its loss on a customer-by-customer basis, presenting testimony from individual advertisers or listeners at trial to establish why each one did not advertise with Citadel, or listen to Citadel’s radio stations, in the aftermath of Katrina. Such a standard appears overly burdensome and is not what is required by the policy issued by AXIS to Citadel. The policy measures BI losses by probable projected experience, not customer-by-customer proof. BI losses are determined by giving due consideration to the experience of the business before the date of the loss or damage and to the probable experience thereafter had no loss occurred. In other words, Citadel’s BI losses are to be determined based on the “actual loss sustained,” by comparing Citadel’s expected performance prior to Hurricane Katrina with its actual performance thereafter.
At trial, Citadel presented evidence tying Citadel’s business losses directly to the impact of Hurricane Katrina on Citadel’s customers and listeners. LaBron James (on-air personality and KMEZ program director), Monica Bussell (Citadel sales director), and David Siebert (a former station manager at one of Citadel’s local stations) testified that they had personally visited or contacted customers, and observed that many businesses were destroyed or out of business as a result of Katrina. Ms. Bussell prepared a document identifying those advertisers, which was provided to AXIS.
Furthermore, Christopher Brophy, Citadel’s forensic accounting expert, calculated Citadel’s actual loss sustained pursuant to the insurance policy’s | coverage provisions. Mr. Brophy collected both quantitative data (historical financial records, budgets, etc.) and qualitative data (how successful was the business, how was the business trending, etc.) as a starting point. Mr. Brophy also interviewed Mr. David Siebert to learn about the business, how the stations generate revenue by selling airtime, and how increased ratings equal increased revenue. Mr. Brophy also learned that Citadel’s competitors, Enter-com and Clear Channel, continued to broadcast while Citadel could not, and that their market share went up after Katrina, while Citadel lost market share. Mr. Bro-phy analyzed each of Citadel’s radio stations individually and learned that all three were enjoying increased ratings at the time of Katrina. Mr. Brophy determined that Citadel’s total claim, including Citadel’s losses during the EPI for ordinary BI, its CBI losses and loss adjustment expenses totaled $5,906,988.00 and the jury awarded this amount to Citadel.
Based on the record before this Court, there is sufficient evidence to support the jury’s finding that Citadel sustained covered losses of $5,906,988.00 caused by Hurricane Katrina and its aftermath.

Bad Faith Damages

La. R.S. 22:658 imposes penalties on insurers who arbitrarily or capriciously *476 fail to pay a claim.[1] In order to recover these penalties, a claimant must show: (1) the insurer received satisfactory proof of loss; (2) the insurer failed to pay the claim within the applicable statutory period; and (3) the insurer’s failure to pay was 17arbitrary, capricious or without probable cause. See Louisiana Bag Co., Inc. v. Audubon Indem. Co., 08-0453, pp. 11-12 (La.12/2/08), 999 So.2d 1104, 1112-13.
Satisfactory proof of loss, as required for an insured to obtain penalties from an insurer, is that which is sufficient to fully apprise the insurer of the claim and the extent of the damage. Yount v. Lafayette Ins. Co., 08-0380, p. 17 (La.App. 4 Cir. 1/28/09), 4 So.3d 162, 172 (citing Talton v. USAA Cas. Ins. Co., 06-1513, p. 15 (La.App. 4 Cir. 3/19/08), 981 So.2d 696, 707). The insurer becomes subject to penalties when the failure to pay within the thirty day time frame is found to be arbitrary, capricious or without probable cause. La. R.S. 22:1892(B)(1); see also Aghighi v. Louisiana Citizens Prop. Ins. Corp., 2012-1096, p. 4 (La.App. 4 Cir. 6/19/13), 119 So.3d 930, 933. “Arbitrary, capricious, or without probable cause, as used in statutes allowing for penalties and attorney fees when an insurer fails to timely pay a claim is synonymous with vexatious, and a vexatious refusal to pay means unjustified, without reasonable or probable cause or excuse.” Sher v. Lafayette Ins. Co., 07-2441, p. 27 (La.4/8/08), 988 So.2d 186, 206 quoting Reed v. State Farm Ins. Co., 03-0107, p. 13 (La.10/21/03), 857 So.2d 1012, 1020-21. Louisiana law requires insurers who dispute the extent of the loss to “tender the reasonable amount which is due,” that is “a figure over which reasonable minds could not differ.” McDill v. Utica Mut. Ins. Co., 475 So.2d 1085, 1091-92 (La.1985). An insurer who fails to tender any amount within the statutory period must have relied on a reasonable defense that would preclude recovery in order to avoid a bad faith finding. Id. Arbitrariness is a question of fact to be decided by the jury. See Coig v. Gregoire, 07-1296, p. 4 (La.App. 4 Cir. 4/9/08), 989 So.2d 786, 789. Whether an insurance company’s actions were “arbitrary, capricious or without probable cause” is a fact issue, and thus a bad faith verdict will not be reversed on appeal unless the verdict is manifestly erroneous or clearly wrong. Jouve v. State Farm Fire & Cas. Ins. Co., 10-1522, p. 9 (La.App. 4 Cir. 8/17/11), 74 So.3d 220, 226. “Great deference” must be accorded to the trier of fact with respect to bad faith. Coig, 989 So.2d at 789.
In the instant case, all three elements for a finding of bad faith have been met. Citadel’s claims adjuster, James Er-rico, submitted the calculation of Citadel’s loss to AXIS in December of 2006. This claim contained financial information that both Citadel and AXIS used to evaluate Citadel’s loss. Therefore, AXIS received satisfactory notice no later than December 2006. AXIS failed to make any payment on the claim within the applicable statutory period when it was aware that some of the losses were indeed covered. AXIS’s failure to pay could also be characterized as arbitrary or capricious as AXIS had already formally denied coverage on July 11, 2006 (before Citadel had even submitted its claim), asserting that the claims were excluded by Exclusion K, the “loss of market” exclusion, and because Citadel’s listeners were not its customers. In fact, the record shows that AXIS’s claims professional, Larry Hutchinson, failed to assert Exclusion K, or to factor it into his assessment of AXIS’s exposure for the first seven months he was handling the claim, because he believed Exclusion K did *477 not apply. Mr. Hutchinson testified that, after reviewing the policy, preparing a policy abstract, |fland identifying “problem areas,” including potentially-applicable exclusions, he initially set the reserve of $7,000,000 for business interruption based on his assessment that the claim could present a large exposure.
As stated above, if the insurer agrees that any part of the claim is covered, it must pay that part to avoid bad faith liability. Here, the evidence establishes that even under AXIS’s incorrect interpretation of Exclusion K, AXIS cannot satisfy that standard. Accordingly, we find no error in the jury’s finding that AXIS was in bad faith.

Attorney Fees

In its third assignment of error, AXIS contends that the trial court improperly entered judgment awarding $2,953,494.00 in attorneys’ fees when there was absolutely no evidence offered of Citadel’s attorneys’ fees. In the instant case, no exhibit or testimony was ever admitted relevant to the amount of any attorneys’ fees. However, Citadel was permitted to argue the “amount” of its attorneys’ fees during closing argument and Citadel requested that the jury award it $2,953,494.00 in attorneys’ fees. This is the exact amount that Citadel was seeking for an insurance “bad-faith” penalty pursuant to La. R.S. 22:658.
Louisiana law does not allow for a jury to arbitrarily award the amount of a prevailing party’s attorney fees pursuant to statute without any record evidence of those fees or the reasonableness of those fees. See Willwoods Community v. Essex Ins. Co., 09-651, pp. 14-15 (La.App. 5 Cir. 4/13/10), 33 So.3d 1102, 1112; See also Rivet v. State, DOTD, 96-0145 (La.9/5/96), 680 So.2d 1154, 1161. | in Accordingly, the award of attorneys’ fees is hereby vacated and the issue is remanded to the court below for a contradictory hearing where evidence regarding the attorneys’ fees may be offered by the plaintiff and questioned by the defendant.

Loss Adjustment Expenses

In its fourth assignment of error, AXIS contends that the trial court improperly entered judgment awarding “Loss Adjustment Expenses” (LAE) for $250,000.00 in costs incurred by Citadel in retaining a trial expert although the costs of retaining a trial expert are not covered under the plain terms of the LAE provisions. AXIS suggests that the policy’s LAE provision does not cover Mr. Brophy’s fees because he was hired years after Hurricane Katrina to calculate Citadel’s claim for litigation purposes. However, the LAE provision states it will “insure expenses incurred” by Citadel for “assessing, for preparing and/or certifying details of a claim.” It does not exclude expenses incurred with litigation, nor does it require that they be incurred within a specified period after the incident. Mr. Brophy testified about the work he did to “assess” and “prepare” Citadel’s claim, as well as the fees incurred to do that work. That is sufficient evidence to support the jury’s finding that his expenses fit within the LAE. When the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent and courts must enforce the contract as written. See La. C.C. art.2046; Hill v. Shelter Mutual Ins. Co., 05-1783, p. 3 (La.7/10/06), 935 So.2d 691, 694; Johnson v. Orleans Parish School Bd., 10-1388, p. 9 (La.App. 4 Cir. 12/20/11), 80 So.3d 1175, 1182. | t Accordingly, there is nothing improper in the trial court’s awarding “Loss Adjustment Expenses” of $250,000 to Citadel.

Expert Testimony

In its fifth assignment of error, AXIS contends that the trial court abused *478 its discretion in failing to strike the expert testimony of Mr. Brophy. However, AXIS failed to preserve this issue for appeal. AXIS did not seek a pre-trial Dauberb[2] hearing to question Mr. Brophy’s qualifications as an expert. AXIS also failed to object contemporaneously to Mr. Brophy’s testimony, and only challenged his testimony as unreliable after Citadel had rested its case. As such, this assignment of error is waived. In any event, Mr. Brophy’s testimony was based on the policy language, and is consistent with Louisiana law and industry custom. He relied upon Citadel’s books and records, and information from Citadel employees to calculate the claim. Furthermore, a decision to permit a witness to testify as an expert will not be overturned absent a clear abuse of discretion. See Versluis v. Gulf Coast Transit Co., 08-0729, p. 6 (La.App. 4 Cir. 7/29/09), 17 So.3d 459, 46364. Therefore, there was no error or abuse of discretion in the trial court’s allowing the expert testimony of Mr. Brophy.

New Trial

In its final assignment of error, AXIS contends that the trial court abused its discretion by failing to grant AXIS’s motion for a new trial.[3] Essentially, AXIS | ^argües: the trial court did not allow AXIS to present material witness admissions via depositions during its case-in-chief; James Errico’s “expert opinion” were wrongfully admitted and his cross examination was denied; and a copy of the petition was wrongfully admitted into evidence.
AXIS sought to publish portions of four videotaped depositions in its case-in-chief but was prohibited from doing so. The first deposition was that of Citadel’s corporate representative Randy Taylor (a Nevada resident). The other depositions in question relate to two of Citadel’s expert witnesses, David Siebert (a Texas resident) and Christopher Brophy (a Connecticut resident), and James Errico, who Citadel designated as a fact witness. The portions of Citadel’s videotaped depositions that AXIS was not allowed to play were proffered as evidence during trial.
With respect to a non-party, non-expert witness such as James Errico, La. C.C.P. art. 1450(A)(3) provides that a party “may” use a deposition at trial for “any purpose” only if the witness is (a) unavailable, or (b) resides more than 100 miles from the courthouse, or (c) for exceptional circumstances. The trial court has wide discretion in determining a witness’s unavailability. Flannery v. Tastee Donuts, Inc., 529 So.2d 1360, 1362 (La.App. 5 Cir.1988); Bourgeois v. A.P. Green Indus., Inc., 06-87, pp. 20-21 (La.App. 5 Cir. 7/28/06), 939 So.2d 478, 49394. Although Mr. Errico resides more than 100 miles from the courthouse, he voluntarily traveled to New Orleans to testify. AXIS cross-examined him and could have had him testify in its own case-in-chief, but did not. Because, Mr. |1sErrico was in the courtroom during trial and AXIS made no effort to secure his live testimony, it was well within the trial court’s discretion to find that he was not “unavailable” and to refuse to allow AXIS to use his deposition testimony. With respect to AXIS’s proposed use of expert and party depositions, there is no absolute right under any cir *479 cumstances to use party and expert deposition testimony under La. C.C.P. art. 1450. The article clearly says “may” use, and explicitly allows the trial court discretion under La.C.C.P. art. 1450(a)(5). A trial court’s decision regarding the use of depositions will not be disturbed upon appeal in the absence of an abuse of discretion. State, In the Interest of Bordelon v. Guichard, 94-1795, p. 9 (La.App. 1 Cir. 5/5/95) 655 So.2d 1371, 1378. In any event, Messrs. Taylor, Brophy and Siebert testified live and were cross-examined. AXIS could have cross-examined them with their depositions, but did not. Therefore, we find no abuse of discretion in the trial court’s refusal to allow the depositions into evidence.
AXIS also asserts that the trial court erred in admitting Citadel’s petition over its hearsay objection. Citadel sought admission of the petition to establish the fact of Citadel’s damages claim, not for the truth asserted therein. Admitted for this limited purpose, the petition was not published to the jury, nor did the jury view it during deliberations. An exhibit the jury never saw cannot have had a substantial effect on the case’s outcome. As such, any error was harmless.
Accordingly, based on the record before this Court, we find no abuse of discretion in the trial court’s refusal to grant a new trial.
^CONCLUSION
For the above and foregoing reasons, we affirm the judgment of the court below with respect to causation, bad faith damages, loss adjustment expenses, allowance of expert testimony and its denial of a new trial. We find the jury’s award of attorneys’ fees unsupported by the record. Accordingly, we vacate the award of attorneys’ fees and remand the matter for the limited purpose of determining the amount of attorneys’ fees owed.
AFFIRMED IN PART, VACATED IN PART AND REMANDED IN PART

. This subject matter of this statute was formerly contained in La. R.S. 22:1892.

. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

. An appellate court evaluates the trial court's decision to deny a motion for new trial under an abuse of discretion standard of review. West v. Nat’l R.R. Passenger Corp., 03-1707, p. 6 (La.App. 4 Cir. 6/23/04), 879 So.2d 327, 332.