SANDRA CABRINA JENKINS, Judge.
| iThis is an appeal from an award of $2,503,651.26 in attorneys’ fees to Dixie Brewing Company (“Dixie”), the owner of property that was expropriated by the Board of Supervisors of Louisiana State University (the “Board”) for the construction of a new Veterans Affairs Medical Facility in New Orleans. For the reasons that follow, we affirm the trial court’s June 4,2015 judgment.
*980 FACTUAL AND PROCEDURAL BACKGROUND
The long history of this expropriation began on April 29, 2010, when the Board filed a Petition for Access to Property for Inspection Prior to Filing of Expropriation (the “Petition for Access”) in order to gain access to property located at 2401 Tulane Avenue in New Orleans (the “Property”). The Property comprised approximately a full city block, and included a 1907 historic brewery facility. The Petition for Access sought permission to conduct inspections of the Property necessary for the Board to make an offer of just compensation to Dixie. After the inspection, the Board sent Dixie a written offer to purchase the Property for $52,285.00. Dixie refused the offer.
On February 16, 2011, Dixie filed a Petition for Declaratory Judgment, Temporary Restraining Order, and Preliminary Injunction (“TRO Suit”) against the |2Board, seeking to prevent the expropriation and demolition of the buildings on the Property. Although the trial court issued a TRO that day, after conducting a hearing on February 25, 2011, the trial court dissolved the TRO and dismissed Dixie’s TRO Suit, with prejudice.
On that same date, the Board filed a Petition for Expropriation (“Expropriation Suit”) against Dixie and the City of New Orleans (the “City”) to expropriate the Property, which the Board wanted in connection with the construction and development of the new Veterans Affairs Medical Facility, to be located adjacent to the Board’s new University Medical Center.[1] Contemporaneously with the filing of the Expropriation Suit, the Board deposited $52,285.00 into the registry of the court as “its estimate of the just compensation” for the Property. As part of the Expropriation Suit, the Board also requested that Dixie be ordered to pay all outstanding property taxes, penalties, and interest on the Property; and that the City be ordered to cancel all liens and judgments for taxes or otherwise on the Property.
On June 23, 2011, Dixie filed an Answer and Reconventional Demand, in which Dixie asserted that the full value of the Property was $9,146,100.00. In June |¾2011, Dixie also filed a Motion to Dismiss the Expropriation Suit, challenging the constitutional validity of the expropriation.
Between 2011 and 2014, Dixie and the Board litigated various post-expropriation petitions for injunctive relief challenging the constitutionality of the expropriation, and various exceptions of res judicata, no cause of action, and no right of action, three of which reached this court. See Bd. of Supervisors of La. State Univ. v. Dixie Brewing Co., 11-1339 (La.App. 4 Cir. 9/27/11) (unpub.) (denying Dixie’s writ application on motion to consolidate Expro *981 priation Suit with TRO Suit); Bd. of Supervisors of La. State Univ. v. Dixie Brewing Co., 13-0250 (La.App. 4 Cir. 12/4/13), 131 So.3d 130 (affirming' trial court’s judgment granting the Board’s exception of res judicata and dismissing Dixie’s second injunction petition); Bd. of Supervisors of La. State Univ. v. Dixie Brewing Co., 14-0641 (La.App. 4 Cir. 11/19/14), 154 So.3d 683 (granting writ, no relief given from denial of Dixie’s exception of res judicata).
In February 2015, the parties participated in a mediation, which failed to resolve their dispute. Thereafter, the parties attended a two-day settlement conference with the trial court. As a result of -this conference, on March 4, 2015, the parties recited in open court their agreement in principle to settle the matter. The parties agreed that the terms presented on the record would supersede any written agreement to the extent that the terms conflicted.
On March 10, 2015, the parties entered into a written “Settlement, Stipulation and Release Agreement” (the “Settlement Agreement” or “Agreement”). The pertinent terms of the parties’ compromise, which included both the written Settlement Agreement and the terms recited in open court, included' the following “consideration”: (1) the State’s . payment of $4,350,000.00 |4to Dixie; (2) permitting Dixie to withdraw the $52,285.00 deposited by the Board in the registry of the court; (3) the City’s cancellation of a 2008 tax judgment against Dixie and other companies for past-due property taxes, which the parties agreed was valued at $2,162,477.06; and (4) the City’s agreement not to enforce any tax lien or penalty for taxes on the Property from 2008 through the date of the expropriation, which the parties agreed was valued at $1,074,345.47.
The Settlement Agreement further stated that the sums of $4,350,000.00 and $52,285.00, “together with the other consideration stated in this Agreement ... including the amount of attorneys’ fees, costs, and expert witness fees to be awarded by the Court, represented] the full extent of Dixie’s losses, within the meaning of Louisiana Constitutional [sic] Article I, Section 4.”
The Settlement Agreement also addressed how the issue of attorneys’ fees and costs would be decided. The Agreement included a provision under which Dixie’s attorneys could apply to the trial court, through a Motion for Fees and Costs, for an award of attorneys’ fees, costs and expert witness fees. In the Settlement Agreement, “The Board reserve[d] the right to oppose any portion of Dixie’s Motion for Fees and Costs filed by or to be filed by Dixie to the extent that any request is unreasonable or out of line with amounts awarded in similar cases.”
On March 10, 2015, Dixie filed an Application for an Award of Attorney Fees and Costs (“Application for Attorneys’ Fees”). Dixie requested $3,644,709.00 in attorneys’ fees. Dixie calculated this figure based on 40% of $9,111,773.00, which Dixie argued was' the $7,586,822.00 in additional compensation obtained in settlement, plus $1,523,951.00 in judicial interest.
On March 13, 2015, the Board filed an Opposition to Dixie’s Application for Attorneys’ Fees, arguing that the attorneys’ fees should be calculated based solely |Bon the $4,350,000.00 in monetary compensation paid to Dixie. .The Board also argued that the 40% figure was unreasonable. The trial court held evidentiary hearings on this issue on April 16, 2015 and April 21,2015, and read its reasons for judgment in open court on May 6,2015.
On June 4, 2015, the trial court signed a written “Final Judgment on Attorney Fees *982 and Costs” (“Final Judgment”). The Final Judgment awarded Dixie $2,503,651.26 in attorneys’ fees, which represented 33% of the $7,586,822.00 in additional compensation recovered in the settlement.[2] This $7,586,822.00 figure included amounts paid to Dixie, as well as- the value of the tax judgment and tax liabilities cancelled and/or forgiven by the City. The Final Judgment denied Dixie’s request for 5% interest on the total just compensation, but awarded Dixie the stipulated sum of $173,000.00 in costs.
The Board appealed. On December 17, 2015, Dixie filed a “Motion to Dismiss Appeal, Answer to Appeal and Appellee Brief.”[3]
DISCUSSION

Dixie’s Motion to Dismiss Appeal

Dixie argues that the Board’s appeal should be dismissed because the Board did not reserve its right to appeal the trial court’s award of attorneys’ fees in either the Settlement Agreement or in the settlement terms recited, into the record.[4] In its | ^opposition to the Motion to Dismiss Appeal, the Board argues that the settlement terms show a mutual intent by the parties that the attorneys’ fee issue would be litigated, ,up through and including an appeal.
Under La. Civ. Code art. 3076, “A compromise settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express.” The scope of a compromise cannot be extended by implication. Ortego v. State, Dept. of Transp. & Dev., 96-1322, p. 7 (La.2/25/97), 689 So.2d 1358, 1363. In this matter, the parties expressly carved out the issue of attorneys’ fees from the scope of the Settlement Agreement. By allowing Dixie to file a Motion for Attorneys’ Fees with the trial court, and permitting the Board to oppose the motion, the parties clearly intended the attorneys’ fee issue to be resolved by subsequent litigation. Accordingly, we deny Dixie’s Motion to Dismiss Appeal.

Dixie’s Answer to Appeal

Dixie’s Answer to Appeal asserts that the Board’s appeal is frivolous, and that Dixie is entitled to damages in the form of attorneys’ fees and costs incurred in both the lower court and this court. Dixie also contends that it is entitled to additional compensation, up to and equal to the difference between the 33% attorneys’ fees awarded by the trial court, and the 40% requested by Dixie. According to Dixie, this additional compensation is owed because of the “increased work load and delay” caused by the Board’s frivolous appeal.
Under La. Code Civ. P. art. 2168, this court, “may award damages, including attorney fees, for frivolous appeal, and may *983 tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.” An appellee who seeks such damages, however, must file |7an answer to the appeal “not later than fifteen days after the return day or the lodging of the record, whichever is later.” La. Code Civ. P. art. 2133(A); La. Code Civ. P. art. 2164.
The record was lodged in this court on September 29, 2015. The trial court set a return date of October 2, 2015. Dixie filed its Answer to Appeal on December 17, 2015. Because Dixie did not file its Answer to Appeal within the 15-day period set forth in La. Code Civ. P. art. 2133(A), we will not consider Dixie’s request for damages based on a frivolous appeal. See Dailey v. The Home Furnishings Store, 02-1225, p. 6 (La.App. 4 Cir. 9/17/03), 857 So.2d 1051, 1055.

The Board’s Assignments of Error

The Board has two assignments of error: (1) the trial court committed reversible error in awarding attorneys’ fees based on the additional consideration provided in the Settlement Agreement above the $4,350,000.00 paid “in money”; and (2) the trial court’s award of 33% in attorneys’ fees should be reduced to an award that is reasonable.

Assignment of Error No. 1:

Just Compensation in Expropriation Proceedings

In its reasons for judgment, the trial court summarized this issue as follows: “The seminal question before this Court is whether its statutory award of attorney fees is based upon both the cash paid to the landowners and the value of certain nonmonetary rewards that benefit the landowners pursuant to the settlement agreement between the parties.”
The trial court, after reviewing the Louisiana Constitution, the expropriation statute and case law, concluded in its reasons for judgment that “the just compensation requirement in the Louisiana Constitution contemplates an award of | smonetary value to the landowner, which is not limited to an in-hand cash payment to the landowner.”[5] The trial court also found that, based on the terms of the settlement, the “parties agreed to and defined just compensation in the amount of $7,639,107.00.” The trial court concluded that, because the highest amount offered by the Board was less than the compensation awarded for the Property, Dixie was entitled to reasonable attorneys’ fees based on the additional compensation paid under La. R.S. 19.8(A)(3).
Under Louisiana law, “Property owners in expropriation cases are entitled to receive compensation for the full extent of their loss as provided under the Louisiana Constitution of 1974.” Bd. of Supervisors of La. State Univ. v. Boudreaux’s Tire & Auto Repair, L.L.C., 13-0444, p. 4 (La.App. 4 Cir. 3/5/14), 133 So.3d 1262, 1267. Under the Louisiana Constitution, “Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into the court for his benefit.” La. Const, art. I, § 4(B)(1) (emphasis added). The Louisiana Constitution also states that in every *984 expropriation, “the owner shall be compensated to the full extent of his loss, ... which shall include, but not be limited to, the appraised value of the property and all costs of relocation, inconvenience, and any other damages actually incurred by the owner because .of the expropriation.” La. Const, art. I, § 4(B)(5) (emphasis added).
| flUnder the quick-taking provisions of Title 19 of the Louisiana Revised Statutes, unless a jury trial is requested, the trial court shall determine the compensation to be paid to the defendant in an expropriation suit. • La. R.S. 19:8(A)(2). As with the Louisiana Constitution, the statutory measure of compensation to the landowner is “the. full extent of his loss.” La. R.S. 19:9(B) (emphasis added). Under the expropriation statute, immediately after the trial court determines compensation, the plaintiff “shall present: evidence as to the highest amount it offered the defendant for the property and severance damages, if any, prior to the trial on the merits.” La. R.S. 19:8(A)(3). After hearing this evidence, the trial court “shall determine the highest amount offered.” Id. If the highest amount offered is less than the compensation awarded for the property,” the court “may award reasonable attorneys’ fees to the defendant.” Id.
Thus, in expropriation cases, trial courts are permitted to award “reasonable attorney fees to the defendant where the amount of compensation awarded at trial exceeds the highest offer made for the property.” Boudreaux’s Tire, 13-0444, p. 9 133 So.3d at 1269.
The Board does not contend that Dixie is not entitled to attorneys’ fees. The Board argues that Dixie is only entitled to attorney’s fees based on the $4,350,000.00 in “new money” paid by the Board in accordance with the parties’ compromise. The Board contends that the value of the City’s agreement to cancel a long-standing tax judgment against Dixie, and the value of the City’s agreement not to pursue Dixie for past-due property taxes, interest, and penalties on the Property, are not “money,” and cannot be considered as part of the “just compensation” which forms the basis of an award of attorneys’ fees.
| inTo support its argument, the Board seizes on statements made by the Louisiana Supreme Court 37 years ago in Marathon Pipe Line Co. v. Pitcher:
Louisiana’s Constitution and this Court have long recognized that private property could not be taken or damaged except for public purposes and “after” just and adequate compensation is paid.... The principle that compensation for taking property by expropriation müst be a “price” in money has been equally welí-settled in Louisiana. ... Generally it is held that compensation means a full indemnity or remuneration for the loss or damage sustained by the owner of property taken or injured for public use; and just compensation means the full and perfect equivalent in money of the property taken whereby the owner is put in as good a position pecuniarily as he would have been had his property not been taken. Although the means by which compensation is to be paid is seldom prescribed in the constitutions, it is generally held that it must be in money.
Marathon Pipe Line Co. v. Pitcher, 368 So.2d 994, 998 (La.1979) (emphasis added).
According to the Board, “just compensation” can only mean the “full equivalent in money” of the expropriated Property. The Board argues that, in light of Marathon, there is “no legal support” for the trial court’s ruling that attorneys’ fees may be calculated based upon “non-monetary consideration,” such as the City’s agree *985 ment to cancel and/or forgive judgments or liens.
The Louisiana Supreme Court’s Marathon opinion involved a landowner’s challenge to compensation awarded by the trial court for the expropriation of a permanent servitude for use as a petroleum pipeline. As part of the $15,074.50 compensation award, the trial court ordered the pipeline company to pay for the encasement of its pipeline, but only if it became necessary. The defendant landowner argued that she should have been awarded the cost of encasement, ■ which was stipulated at $19,394.10. The Supreme Court found that, because the possibility that the pipeline would have to be encased diminished the market value In of the property, the defendant should have been awarded the stipulated cost of encasement as part of her “just compensation.”
Dixie argues that Marathon is not controlling because in this matter the parties defined “just compensation” in their written Settlement Agreement, and in the terms of the settlement agreement recited into the record. In their compromise, Dixie and the Board agreed that the monetary compensation paid to Dixie, plus the other consideration given, “represented] the full extent of Dixie’s losses, within the meaning of Louisiana Constitutional [sic] Art. 1 Sec. 4.” We agree.[6]
The agreed-upon amount of “just compensation” is found in the terms of the parties’ compromise. The Settlement Agreement states:
In consideration of the mutual promises contained herein the State agrees to pay $4,350,000.00' to Dixie- In addition, and as partial consideration for the settlement, release and compromise of all claims and causes of action that were or could have been raised by Dixie; the City does hereby agree to cancel and not seek to collect the Tax Judgment .... ' The Parties acknowledge and agree that the State has previously deposited the sum of $52,285.00 into the registry of the Court to compensate Dixie for its losses in connection with the Action,- which sum Dixie may withdraw from "the registry as additional, partial consideration for the settlement ... The Parties further acknowledge and agree that the sums of $4,350,000.00 to be paid in accordance with this Agréement and the $52,285.00 previously deposited into the registry of the Court together with the other consideration stated in this Agreement, including the amount of attorneys’ fees, costs and, expert witness fees to be awarded by the Court, represent the full extent of Dixie’s losses, within the meaning of Louisiana Constitutional [sic] Article I, Section 4.” [Emphasis added.]
At the March 4, 2015 settlement hearing, counsel for Dixie and the Board represented to the trial court that the parties had “reached an agreement as to principal in this matter.” The terms of the parties’ settlement placed on the record | iaset forth the dollar value of the “other consideration” referenced in the Settlement Agreement: “As further consideration, the city has agreed to forgive ... the tax judgment, ... which with interest and penalties to date is [$2,162,477.06]_ As further consideration, the city has agreed not to enforce any tax interest or penalty of taxes on the [Property] ... for a total amount of [$1,074,345.47].” Counsel for Dixie represented to the court, without *986 any objection from the Board, that the parties had agreed that this consideration[7] was “adequate compensation or just compensation for Dixie Brewery.”
We agree with Dixie and the trial court that, based'on the terms of the Settlement Agreement, read in conjunction with the settlement terms recited on the reeord, .the parties agreed to and defined “just compensation” as the total amount of $7,639,107.00. “ ‘In cases where the amount finally awarded for the value of the property for the taking is substantially higher than the amount offered by the authority initiating the taking, attorneys’ fees should be paid.’ ” Bd. of Supervisors of La. State Univ. v. Villavaso, 14-1277, p. 19 (La.App. 4 Cir. 12/23/15), 183 So.3d 757, 769 (citing La. R.S. 19:8(A)(3); City of New Orleans v. Condon, 600 So.2d 78, 81 (La.App. 4th Cir.1992)).
Here, the $7,639,107.00 in compensation ultimately obtained by Dixie is substantially higher than the $52,285.00 offered by the Board. See La. R.S. 19.8(A)(3). The trial court did not err in finding that Dixie was entitled to an 11Raward of reasonable attorneys’ fees based on the additional compensation paid in excess of the Board’s meager offer.

Assignment of Error No. 2:

Reasonable Attorneys’ Fees

The Board contends that the trial court’s award of $2,503,651.26 in attorneys’ fees is unreasonable and not in line with amounts awarded in similar cases.
An award of attorneys’ fees is left to the sound discretion of the trial court, which will not be reversed on appeal unless that discretion was clearly abused. 1100 S. Jefferson Davis Parkway, LLC v. Williams, 14-1326, p. 11 (La.App. 4 Cir. 5/20/15), 165 So.3d 1211, 1220. “Where the standard of review is an abuse of discretion, the role of the reviewing court is not to determine what it considers to be an appropriate award, but rather it is to review the exercise of discretion by the trier of fact.” Covington v. McNeese State Univ., 12-2182, p. 11 (La.5/7/13), 118 So.3d 343, 351.
“As a general rule, attorney fees are not allowed in Louisiana unless they are authorized by statute or provided for by contract.” Boudreaux’s Tire, 13-0444, p. 9, 133 So.3d at 1269. In this matter, attorneys’ fees are allowed under the expropriation statute and under the parties’ Settlement Agreement. ■
We now, therefore, address the reasonableness of the trial court’s award of $2,503,651.26 in attorneys’ fees, which the court calculated as 33% of the $7,586,822.00 in additional compensation obtained by Dixie’s attorneys.[8]
*987 11 ¿Attorneys’ fees should be awarded on a case-by-case basis after examining numerous factors. Borgnemouth Realty Co., Ltd. v. Parish of St. Bernard, 13-1651, p. 17 (La.App. 4 Cir. 5/21/14), 141 So.3d 891, 903. The factors are to be considered when deciding upon a reasonable fee award are: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) the extent and character of the work performed; (6) the legal knowledge, attainment, and skill of the attorneys; (7) the number of appearances made; (8) the intricacies of the facts involved; (9) the diligence and skill of counsel; and (10) the court’s own knowledge. Boudreaux’s Tire, 13-0444, p. 10, 133 So.3d at 1270 (citing State, Dept. of Transp. & Dev. v. Williamson, 597 So.2d 439, 442 (La.1992)).
Here, the parties extensively briefed the issues ' regarding reasonable attorneys’ fees, including the application of the Williamson factors. The trial court held a two-day evidentiary hearing on these issues, which included testimony by one of Dixie’s lead attorneys centered largely on the Williamson factors.
In the trial court’s reasons for judgment, the court placed particular emphasis on the. first factor, “ultimate, result obtained,” describing it as “a good one.” The court also emphasized the “amount of money involved.” The trial court noted that the Board offered ■ Dixie only $52,285,00, an amount far less than the $7,639,107.00 in compensation ultimately obtained by Dixie via settlement. The trial court concluded that Dixie’s attorneys obtained “an astonishing 146 percent [sic] more than the amount the state deposited in the registry of the court.” (Emphasis added). Based on the record, the trial court clearly intended to say that the total compensation paid to Dixie was “146 times” the amount initially offered to Dixie and deposited in the registry of the court.
I n;The trial court also referred to testimony by Dixie’s lead attorney that his firm expended hundreds of hours on research on many issues of first impression. Dixie’s attorney also said that his firm strictly devoted most of its time to this case between October 2014 and the March 2015 trial date. Dixie’s attorney also testified that, in preparation for trial, Dixie retained six expert witnesses, and took approximately 23 depositions. Dixie’s attorney stated that his law firm expended more than $200,000.00 in expenses and costs.
The trial court also noted that Dixie’s attorneys had “much responsibility” placed on them to challenge the constitutionality of the expropriation as well as the valuation of the Property. The court found that Dixie’s attorneys were experienced and knowledgeable in expropriation cases, and were diligent and skillful in seeking the highest and best use of the Property which, according to the court, was “admittedly not in the most optimal shape.” The court found that,,based on its review of the court’s docket, and the procedural history of the ease, Dixie’s attorneys made “a number of appearances” in this matter. The trial court also emphasized the importance of the litigation, in that it involved the expropriation of a well-known local brewery for the purpose of developing a major medical complex previously destroyed by Hurricane Katrina.
The trial court, in light of its thorough assessment of the Williamson factors, concluded that an attorneys’ fee award of $2,503,651,26, which was calculated as 33% .of the $7,586,822.00 excess award obtained, was reasonable. We find no abuse of discretion.
The parties’ Settlement Agreement also permitted the Board to challenge an award *988 of attorneys’ fees that was “out of line with amounts awarded in similar cases.” The Board contends that the 33% award of attorneys’ fees was | ^unreasonable in light of attorneys’ fee awards in similar eases, such as State, Dept. of Transp. & Dev. v. Williamson, 597 So.2d 439, 443 (La.1992) (17% of recovery in excess of DOTD’s offer), and City of Shreveport v. Standard Printing Co. of Shreveport, Inc., 427 So.2d 1304, 1310 (La.App. 2d Cir.1983) (20% of recovery in excess of city’s offer).
At the April 16 and April 25, 2015 trial on the issue of attorneys’ fees, Dixie introduced an April 2013 judgment from another expropriation action brought by the Board, Bd. of Supervisors of La. State Univ. v. 1732 Canal Street, L.L.C., No. 10-10488, Div. N., Civil District Court, Parish of Orleans, State of Louisiana. In the 1732 Canal Street suit, .the Board filed the expropriation action to facilitate the construction of the University Medical Center (which was adjacent to the Veterans Affairs Medical Center), and deposited $4,500,000.00 in the registry of the court. The jury returned a verdict of $9,566.640.00. The trial court awarded the defendant attorneys’ fees in the amount of 18% of the additional compensation awarded to the defendant, which the Board did not challenged' on appeal. See Bd. of Supervisors of La. State Univ. v. 1732 Canal St., L.L.C., 13-0976, p. 1 (La App. 4 Cir. 1/15/14), 133 So.3d 109, 112.
In another expropriation action brought by the Board, Bd. of Supervisors of La. State Univ. v. Villavaso, the Board also filed the expropriation suit to facilitate the construction of the University Medical Center, and offered the defendant $172,-000.000. After a bench trial, the court awarded the defendant $412,638.00 in compensation, which was “substantially higher” than the Board’s offer. This court affirmed the award of $165,000.00 in attorneys’ fees, which was approximately 68% of the $240,638.00 in additional compensation. Villavaso, 14-1277, p. 19, 183 So.3d at 769.
In Bd. of Supervisors of La. State Univ. v. Boudreaux’s Tire & Auto Repair, supra, the Board offered the defendant $685,358.00 for the property, which was needed for the construction of the Veterans Affairs Medical Center. ■ After a trial, the defendant obtained a final judgment of $978,600.00, which was $293,242.00 more than the amount offered by the Board. This court affirmed the trial court’s award of attorney fees of $109,021.73, which was 37% of the increase in compensation due the defendant. Boudreaux’s Tire, 13-0444, pp. 10-12, 133 So.3d at 1270-71.
Here, as emphasized by the trial court, the compensation obtained by Dixie’s attorneys was not only substantially higher, it was a 146 times the amount originally offered by the Board. We find that the trial court’s award of 33% of the additional compensation paid to Dixie is not out of line with amounts awarded in very similar expropriation actions filed by the Board for the construction of the Veterans Affairs Medical Center and the University Medical Center.
Aside from the Williamson factors, the Board argues that the award of attorneys’ fees was unreasonable because Dixie’s attorneys spent a significant amount of time on issues that were unsuccessful and frivolous. According to the Board, between May 25, 2011 and August 19, 2014, Dixie’s attorneys spent nearly all of their time unsuccessfully challenging the constitutionality of the expropriation. We agree with the trial court that the Louisiana Constitution permits a landowner to challenge the expropriation of his or her land, and a landowner who chooses to do so should not be penalized for exercising his or her “fundamental right” to test *989 an expropriation “on all points or issues.” Boudreaux’s Tire, 18-0444 at p. 14, 133 So.3d at 1272. This argument has no merit.
Finally, the Board argues that Dixie did not meet its burden of proof on the issue of attorneys’ fees because it did not provide the trial court with any supporting documentation, such as affidavits or billings showing the number of attorney hours spent on specific issues. This is not the ease, such as in Citadel Broad. Corp. v. Axis U.S. Ins. Co., 14-0326 (La.App. 4 Cir. 2/11/15), 162 So.3d 470, where there was no record evidence of the attorneys’ fees or the reasonableness of those fees. In this case, the trial court heard testimony from Dixie’s lead attorney centered on the Williamson factors. This argument also is without merit.[9]
In sum, the trial court has great discretion in setting attorneys’ fees and its award will not be modified by a reviewing court absent a showing of an abuse of discretion. The trial court thoroughly assessed and balanced the Williamson factors based on the evidence and the record before it, arid ¿warded reasonable attorney’s fees. We find no abuse of discretion.
CONCLUSION
In this six-year-old expropriation action, the parties entered into a valid compromise in which' they agreed that the $7,639,107.00 settlement figure represented “just compensation” to Dixie for the full extent of its loss. Through the efforts of Dixie’s attorneys, this settlement amount was more than 146 times [13the amount originally offered by the Board for the Property. Under these circumstances, we conclude that the trial court, did not abuse its sound discretion in awarding Dixie attorneys’ fees in . the amount of $2,503,651.26. We also deny Dixie’s Motion to Dismiss Appeal, and do not consider Dixie’s Answer to Appeal, which was not timely filed.
AFFIRMED.

. The federal district court in Dixie Brewing Co., Inc. v. Dept. of Veterans Affairs, No. 13-6605, 2013 WL 6715921, **1-2 (E.D.La. Dec. 18, 2013), summarized the background facts of this case:
The City of New Orleans, LSU, and the VA entered into numerous agreements in which LSU agreed to invoke "quick-take” authority under Louisiana Revised Statute § 19:141 to assist New Orleans in making land available to the VA for its development of the medical center: LSU would expropriate the required land for both the LSU and VA sections of the complex, and then LSU would transfer a portion of the land to the VA. The designated area for the VA hospital is bordered by Galvez Street, Rocheblave Street, Canal Street, and Tulane Avenue. The Dixie Brewery Building, which at one time brewed the local Dixie beer, is located on a parcel at the comer of Rocheblave Street and Tulane Avenue. The Dixie property was not originally included in LSU’s expropriation efforts; but in February 2010, the site was added to the land slated for expropriation, spurring a torrent of state-court activity ever since.

. The trial court deducted the $52,285.00 already deposited in the registry of the court froiri the $7,639,107.00 total compensation to ' calculate the $7,586,822.00 in additional compensation recovered.

. Although’the cover page of Dixie's brief is styled "Motion to Dismiss and Appellate Brief,” page 1 of the brief states that it is "Dixie Brewing Company, Inc.’s Motion to Dismiss Appeal, Answer to Appeal and Appellate Brief.” t

.Neither party challenges the enforceability of tire oral settlement agreement. A compromise agreement recited in open court and capable of transcription from the record will be treated as though it were a written contract, and each party acquires the right of judicially enforcing the performance of the agreement even though its substance may later be written in a more convenient form. Sileo v. Berger, 11-0295, p. 9 (La.App. 4 Cir. 9/28/11), 74 So.3d 753, 759.

. This court may consider the trial court’s reasons for judgment when it reviews the record and applies the appropriate standard of review. Morton M. Goldberg Auction Galleries, Inc. v. Canco, Inc., 94-0734, p. 3 (La.App. 4 Cir. 1/31/95), 650 So.2d 801, 803. "|T]he entire reason for having the trial court provide written reasons for judgment is to furnish the appellate court with guidance in understanding how the lower court reached its decision.” Id,

. For the same reason, we reject the Board’s argument that the cancellation of the tax judgment and liens was not “just compensation” because il resulted, not from the expropriation, but from Dixie’s (and other non-patties') refusal to pay property taxes.

. Although the parties used the term "consideration,” unlike the common-law, the Louisiana Civil Code uses the term "cause.” "Cause” is defined as "the reason why a party obligates himself.” La. Civ. Code art. 1967. Thus, cause need not have any economic value. See Slimp v. Sartisky, 11-1677, pp. 24-25 (La.App. 4 Cir. 9/17/12), 100 So.3d 901, 918. Under Louisiana law, the reason why a party binds himself need not be to obtain something in return or to secure an advantage for himself. Id. at p. 24. An obligor may obligate himself for the benefit of the other party without obtaining any advantage in return. Id.

. At the hearing on attorneys’ fees, one of Dixie’s attorneys testified that Dixie and its attorneys had entered into a "hybrid” contingency fee agreement. The trial court ruled that the "hybrid” contingency fee agreement was not valid under Louisiana law, and Dixie did not appeal this ruling. Even if the contingency fee contract were valid, the trial court would not be bound by it in determining reasonable attorneys’ fees. Boudreaux’s Tire, 13-0444, p. 12, 133 So.3d at 1271.

. As we have stated before, "[A] court does not have to hear evidence concerning time spent or hourly rates charged in order to make an award since the record will reflect much of the services rendered.” 1100 S. Jefferson Davis Parkway, 14-1326, p. 11, 165 So.3d at 1220 (quoting Lifetime Constr., L.L.C., v. Lake Marina Tower Condo. Ass'n, Inc., 12-0487, p. 10 (La.App. 4 Cir. 3/27/13), 117 So.3d 109, 116).